JUDGE PRYOR
delivered the opinion op the court.
In the month of August, in the year 1868, both boards of the General Council of the city of Louisville passed an ordinance for the improvement of one of the streets of that city. The mayor having advertised for proposals to construct the work, the contract was awarded to the appellant, Murphy, he being the lowest bidder. This contract ivas reduced to writing, signed by the mayor on the part of the city, also by the appellant, and attested by the city engineer, in accordance. with the law governing the action of the city officials in such matters.
By section 13 of the ordinance to establish an engineer’s department for the city of Louisville it is provided “that no contract shall be binding on the city until it has been approved by both boards of the General Council, and this shall be necessary to make the contract complete and binding on the city.”
*192 In January, 1869, the board of aldermen approved the contract, as required by this ordinance; but so far as appears from this record no order of approval was ever made by the common council.
In order to make a contract binding and complete on the part of the city for such an improvement as the one in question it must be signed by the mayor and the party undertaking its execution, and approved by the boards of aldermen and common council. "When this is done the party making the improvement is entitled to recover of the property-holders on the street where the improvement is made the agreed price. It is conceded by the parties to this controversy that no recovery can be had as against the owners of the property located on the street where this improvement was made, for the reason that the contract was not executed as required by section 13 of the ordinance before referred to; and it is now insisted by the appellant (Murphy) that, as he can not recover of the property-owners, the city is liable to him for the value of his work. This work is estimated to be worth about nineteen hundred dollars, and was done and performed on a street used and controlled by the city authorities.
He alleges in his petition facts showing that his only remedy, if any, is against the city, and the liability of that corporation is the essential question in the case.
The appellant insists that the city is liable, first, because the city authorities áfter the contract was signed by the mayor ratified and approved it; second, that the city derived a benefit from appellant’s labor, and the law implies a promise to pay; third, because the authorities failed or refused to have the contract approved by the common council, thereby releasing the owners of the property adjacent to the street from all liability to pay for the improvement.
There was no law in any clause of the city charter, or any ordinance pertaining to it, at the date of this contract, with *193 reference to street improvements, authorizing the city authorities to make any contract other than in the mode prescribed by section 13 of the “ordinance to establish an engineer’s department.” The power of the mayor, board of aldermen, and common council to contract for such improvements is derived solely from this enactment. Their power to contract is limited and restricted by its provisions, and an attempt to make contracts in a different manner can not be sanctioned or sustained by any law creating or governing this corporation. In the case of Head against the Providence Insurance Company Chief Justice Marshall says, “The act of incorporation is to them an enabling act; it gives them all the power they possess; and when it prescribes to them the mode of contracting they must observe the mode, or the instrument no more creates a contract than if the body had never been incorporated.”
If the approval of the common council can be dispensed with and still the contract remain obligatory, the approval of the board of aldermen would be' equally as unnecessary, and the mayor alone left with the sole power of executing all such contracts for the city. These safeguards, devised by legislative wisdom for the protection of municipal corporations, would thus be disregarded, and the city placed within the power of an official who might be bold or reckless enough to render nugatory these conservative powers so necessary to the faithful administration of every city government.
The contract relied upon in this case was not executed in accordance with the law under which the city officials are required to act in making such contracts, and is therefore null and void. Whether a contract not made in accordance with the law from which the city officials derive their power can be afterward ratified so as to make it binding on the corporation is a question of doubt, and in regard to which we find conflicting authorities. It is not made necessary, however, in *194 the present case to determine this question. The corporation, by its officers, never ratified the contract. It is true the board of aldermen and common council passed a resolution directing the payment of the money; but this action on their part, instead of being approved by the mayor, was vetoed, and that veto sustained by the board of aldermen; thus leaving the corporation and the appellant in the position to each other with reference to the contract they were before the resolution passed. Nor is the corporation liable for the value of the work by reason of any implied promise to pay, upon the idea that the city derived a benefit from it. If so, as previously argued, it would dispense with the exercise of the.power conferred by those in authority to execute contracts, and the contractor, or the party performing the work at the instance of any official of the corporation or even inhabitant of the city, could make improvements beneficial to the corporation, and thereby create an implied contract on the part of the city to pay. If the alleged contract is made otherwise than as required by the ordinance, it is not binding; and if not obligatory as a contract, the law creates no promise to pay. The difference between the contract of a private person and that of an officer of a corporation is this: an individual has the right to make, alter, or ratify a contract at his own will and pleasure with the consent of the party contracting with him; or if he stands by and permits others to work for him, and accepts the work, the law implies a promise to pay its value; while an officer of a corporation has no power to make a contract except in the manner pointed out by the statute from which the power is derived. (Zottman v. San Francisco, 20 Cal. 96.)
Nor is the corporation liable by reason of the failure of the common council to approve the contract. Field, Justice, in the case above referred to, says “that a party dealing in a matter expressly provided for in the charter is bound to see to it that *195 the charter is complied with; if he choose to take the hazard or neglect this, he is a mere volunteer, and must suffer.”
In the case of Brady v. Mayor of New York (16 How.) it is said “that persons dealing with a corporation, the mode of whose action is limited by the charter, must take notice of these restrictions, and see that the contract is made in the manner authorized by the charter.” It is insisted, however, by counsel for the appellant that the cases cited apply alone to contracts made by officers of corporations in violation of the charter from which their power to contract is claimed. This is conceded, and the authorities referred to quoted as having an analogy only to the facts and principles involved in the case now being considered.
In the case of Swift against Williamsburg (24 Barb. 427) “the common council had power to open and improve the streets only upon petition signed by one third of the persons owning lands within the assessed limits. A party entered into a contract with the corporation for improving a street, upon the false representation of the council that such a petition had been made. Held, that the provisions of the law being public, and all the proceedings leading to a determination by the council to make the improvement being matters of record, all persons were chargeable with notice of the law and such proceedings, and that, notwithstanding these false representations by the council, no action would lie against the city for work done under the contract.”
If contracts made by officers of a corporation in violation of its organic law are to be disregarded, how can the present contract be enforced, or a recovery against the city had, when it is neither authorized by the charter nor the ordinance from which the power to make it is alone derived ? The mayor had no power, either under the charter or ordinance, to make such a contract with the appellant.
There is a material distinction between public and private *196 corporations. The latter are created for the interests of individuals, and usually vest them with rights of which they can not be deprived. They are entitled to all the benefits resulting from these private enactments; make by-laws for the rules and regulations of the corporate body, and of the existence of which the public are not required to take notice.
A public corporation is subject to the control of the government from which it derives its existence, and is in fact a part of the government itself, created for the purpose of aiding in sustaining and enforcing the rules, regulations, and' laws so indispensable to every municipal government. These corporations are created for public purposes, and may be abolished or altered at the will and pleasure of the power creating them. The charter creating the present corporation (the city of Louisville) vests the legislative departments of the city government with the power to enact laws for the purpose of promoting the welfare and advancing the interests of those living within its corporate limits. These laws, when in accordance with the city charter, and not in conflict with the state or Federal constitution, are to be respected and obeyed by all those subject to the municipal government. The laws or ordinances are made public, and apply to all within the boundary of the corporation. Those dealing with the corporation through its officials are hound to tahe the same notice of its laws and ordinances that a citizen of the state is with reference to legislative enactments. These ordinances are not such by-laws as apply to private corporations, where none are interested but the individual members, and the rules and regulations by which they are governed are kept subject alone to their own custody and within their own knowledge.
If 'laws are enacted by the city legislature prescribing the manner in which contracts for the improvement of streets are to be made, every one contracting for the construction of these improvements within the city limits is presumed to know the *197 law regulating the manner in which such contracts are made, and must see to it that the parties he contracts with can legitimately exercise this power.
The question in this case is not whether a contract properly entered into by the city has been violated, but whether or not any contract was ever made. A contract must first be made before it can be violated. If the city ordinance requires that the contract shall be signed by the mayor and approved by the board of aldermen and common council before it becomes valid and binding as a contract, then it is clear that there is no contract until it is so signed and approved; and if signed by the mayor only, and not approved by both branches of the city legislature, or if not presented to them for approval, we are at a loss to perceive how the city is to be made liable for neglecting to make the contract. The fact that the writing was not presented to or approved by the council is conclusive that no contract was made, and the party executing the work under the agreement with the mayor alone has no remedy against the city.
When one has made a valid and binding contract with a corporation through its agents, and has suffered loss by the neglect of the corporation to perform some act or discharge some duty with reference to the contract of which the contracting party is not required to take notice, the corporation is liable; or where such a contract has been violated by the corporation the right of the contracting party injured by this non-compliance to recover damages is unquestioned. In the present case, if the contract had been fully executed by the city, and the work and labor performed by the appellant, and the city authorities had failed to comply with some provisions of an ordinance, or had omitted to perform some duty by which the property-owners on the street where the improvement was made were released from liability to pay the contractor (the appellant), then the city would be liable, for the *198 reason that it had made a valid and binding contract with him to do the work; and if by any act or omission of the corporation it has released the property-holders from liability, the city must suffer the loss. In this case no contract was made, and therefore no liability exists.
In the case of Kearney v. The City of Covington (1 Met. 345) it was adjudged “that when the city council had employed the party to execute the work it was the duty of the city to adopt such measures as would render the lot-owners liable, and upon a failure to do this the city was responsible.” The city council in that case had the authority to make the contract, and did in fact execute it; but if there had been no such contract by the council, it could not be urged that the city ivould have been responsible. The duties and obligations on the part of the city to see that proper measures are adopted to enable the contractor to get his money, arise when a contract is made that is valid and obligatory upon the corporation; but we can not adjudge, as is contended for in an elaborate and able argument by counsel for the appellant, that when the contract was signed by the mayor only' it was a breach of duty on the part of the city in the failure of the council to approve it, and for which the city must be held liable in damages.
The proof in this case also conduces strongly to show that the appellant progressed with this work under a full knowledge that the common council had never approved the contract, and when so informed by the assistant engineer his response was “that he would continue the work at his own risk.” It is unfortunate for him to have expended his means and labor in the execution of such a contract, his misfortune originating from his own folly in prosecuting the work when he knew, or ought to have known, that the contract had never been approved as required by the city ordinance.
The judgment is therefore affirmed.