## City of Newport v. Schoolfield.

(Decided February 15, 1911.)

### Appeal from Campbell Circuit Court.

1. Municipal Corporations—Contracts.— A municipal corporation is not bound by the acts of its agents coming within the apparent scope of their power and authority; their authority to act must be explicit; it must clearly appear, and its existence will not be presumed.

2. Same—No Implied Contract.—The fact that a municipal corporation received the benefit of a contractor's work does not create a contract by implication on the part of the city to pay for said work.

3. Same—Damages for Breach of Contract.—Where a contractor reconstructed a street under a written contract and received the contract price therefor from the city, he can not afterwards sue the city for damages for the increased cost of labor and materials used in executing the contract.

4. Contracts.—A party to a written contract will not be permitted to execute his part thereof and then claim rights in opposition to the contract, in the absence of fraud, accident or mistake practiced upon him in its execution.

C. T. BAKER for appellant.

S. C. BAILEY for appellee.

OPINION OF THE COURT BY JUDGE MILLER—Reversing.

Pursuant to a resolution of the general council of the city of Newport, its mayor entered into a written con-

tract on September 10th, 1906, with the appellant, School-field, by which Schoolfield agreed to reconstruct Eleventh street between Brighton and Isabella streets, in said city, with concrete curbing and a brick roadway, at the prices specified in the contract. Section 76 of the specifications, which were made a part of the contract, reads as follows:

"The work shall be commenced when directed by Supt. of Public Works & City Engineer * * * days after the execution of the contract, and shall be completed within sixty days thereafter, unless an extension of time is granted by the General Council, but delay caused by the suspension of work by order of the Superintendent of Public Works or City Engineer shall not be included as against the contractor in computing said time."

The petition alleges that it was well understood between the contracting parties that such notice would be given within ten days from the day of signing the contract. The work was greatly delayed in waiting upon the street railway company, which was to lay its concrete foundation under its tracks before the street could be reconstructed. Finally, on July 18th, 1907, Schoolfield addressed a written communication to the general council of the city stating that, since the signing of the contract, he had at all times been ready to perform his undertaking thereunder, but had been prevented from doing so by the city; and that in the meantime the cost of labor and the prices of the materials that would be necessary to carry out the contract had so greatly increased that he could not proceed with said contract, unless the defendant would pay the cost of labor and material in excess of what would have been the cost thereof had he been permitted to perform the contract within a reasonable time. The contract called for Peebles Block in the reconstruction of the brick pavement. In his communication to the council Schoolfield further said that Peebles Block could not be obtained, but that some other block, acceptable to the council, could be used. He estimated the extra cost at $1,236.70, and closed his communication as follows: "Therefore, if you desire me to proceed, I request that you agree to pay the difference between the price of labor and materials at the time said contract was entered into, and the price of same at the present time to me, and allow me to substitute the Logan Block or some other block acceptable to the general council." The only action taken upon the communication by the general council

was to refer it to the Law and Improvement committee and the city solicitor.

On August 10th, 1907, pursuant to a resolution of the general council, the city engineer wrote to Schoolfield as follows: "You are hereby directed to proceed with your contracts on Eleventh street and on Tenth street. Omit the iron protection strips on both contracts." On August 14th, 1907, the mayor of the city, pursuant to the same resolution, wrote Schoolfield as follows: "You are hereby notified to immediately proceed with the construction of Eleventh street between Brighton street and Isabella street, pursuant to your contract with the city of Newport, of date September 10, 1906."

Schoolfield begun work on August 10th, 1907; and having completed it to the satisfaction of the city, it accepted the work and paid Schoolfield $4,735.49 therefor, on September 17th, 1908, that being the amount called for by the contract. It became necessary, however, in doing the work to substitute some other block in place of the Peebles Block, which could not be obtained; and, with the consent of the Improvement Committee of the general council, Athens Block was used in the construction of the pavement. The general council took no action upon Schoolfield's request that he be allowed to use a substitute in the place of the Peebles Block; and the only authority he had to make that change was the verbal consent of the Improvement Committee.

On April 4th, 1910, Schoolfield brought this suit against the city of Newport to recover $1,429.73, which he was compelled to pay for the materials and labor in making the street, in excess of the sum he would have been required to pay if he had done the work within a reasonable time after the making of the contract. A demurrer to the petition was overruled. In addition to a traverse, the answer pleads (1) that the appellant had paid Schoolfield $4,735.49 on February 17th, 1908, in satisfaction of the work under the contract; (2) that the ordinance under which the contract was made had not been published or advertised in a newspaper, as required by law; and (3) that the appellee, without the authority of the appellant, had used Athens Block brick in the reconstruction of the street in place of Peebles Block brick, as required by the contract, and that by reason thereof the appellant had been damaged in the sum of $1,429.73. The two last-named defenses have been practically aban-

doued; they were not urged upon the trial in the circuit court and are not insisted upon here. Moreover, the defense that appellee had used Athens Block brick in the reconstruction of the street instead of Peebles Block brick is not well laid, in view of the fact that the appellant has formally, and by a proper resolution, accepted the street as made and has paid for it with full knowledge of the fact, and as a compliance with the contract. In addition to the question of law raised by the demurrer to the petition, the case was chiefly tried below, and has been urged here, upon the first defense above set forth, which pleads that when appellant paid the $4,735.49 on February 17th, 1908, it paid the appellee all that was due him under the contract and in full compliance therewith.

Upon the trial below, the appellant offered to show that the Improvement Committee of the council had an agreement with Schoolfield, whereby he was permitted to change the block from Peebles Block to Athens Block, which was an inferior block, in consideration of his agreement to do the work at the same prices as those called for in the original contract. The circuit court declined to allow the city to show that fact, because no such issue had been raised by the pleadings. The court overruled appellant's motion for a peremptory instruction to the jury to find for the defendant.

The petition is framed upon the idea that the work having been performed after appellee's notice to the general council and pursuant to their subsequent notice to proceed with the work, there was an agreement on the part of the city to permit him to do the work under the suggested altered terms. The petition does not in its terms ask damages; it merely alleges that in response to Schoolfield's communication to the general council, that body directed the mayor to notify Schoolfield to commence work under the contract, and that he had done the work. The court, however, instructed the jury upon the theory that this was a case for damages, and the jury found for the plaintiff and fixed the damages at $964.75. From a judgment for that amount the city of Newport prosecutes this appeal.

The several views of the law of this case as presented by the parties thereto, may be discussed under the following three heads: (1) Was the work done under the contract as modified by the Improvement Committee and appellee? (2) Has appellee a right to maintain this action

upon a contract to be implied from the benefits received by the appellant? And (3) the work having been done under the original contract, has appellee a cause of action for its breach?

Did the agreement between Schoolfield and the Improvement Committee amount to a new contract, or a modification of the original contract? Section 3094 of the Kentucky Statutes provides that the general council of cities of the second class (Newport being a city of that class) shall have and exercise exclusive control and power over the streets and highways, including the paving and repaving thereof; while section 3096 provides that the general council may provide for the construction and reconstruction of streets by ordinance. No other body, officer or agent is given authority to do this work, and the general council may authorize it by ordinance only. In the case at bar, the Improvement Committee had no authority to change the old contract or to make a new contract with Schoolfield for the reconstruction of the street; since the Legislature in its wisdom had lodged that power with the general council of the city, consisting of two separate boards whose action was to be approved by the mayor. It would, indeed, be an unusual exercise of this important power if a committee of one or both of these boards should be allowed to exercise the power which can only be exercised by both boards and in the manner pointed out by the statute. In Abbott's late work on Public Corporations, section 170, the rule is announced in the following explicit terms:

"The legal principle can not be too often repeated that a public corporation is not bound by acts of its agents coming within the apparent scope of their power and authority. Their authority to act must be explicit and direct that the corporation be bound. There are found therefore many contracts made or attempted to be made by public officials held invalid which, if executed on behalf of a private corporation or a natural person, would be enforced. The power of public officials to bind a corporation in the making of a contract or of the corporation itself to contract, is closely scrutinized, and unless the same clearly appears, its existence will not be presumed.

"Contracts made by officials concerning matters which do not come within the scope of duties thus specified, or for which authority does not exist can not be en-

forced. This doctrine is most emphatically applied in connection with those acts involving the expenditure of public moneys.

"The authority of public agents or officials being thus special and limited, all persons dealing with them are charged with notice of such limitations and are bound at their peril to ascertain the nature and the extent of their authority and especially is this true of acts or duties conferred specifically by statute."

In Trustees of Belleview v. Hohn, 82 Ky., 1, the town contracted with Hohn for the improvement of certain streets which were to be paid for by assessments against the abutting property-holders. Having failed to hold the property-owners liable for the debt, for want of power in the town to bind them, Hohn sued the town; and, as in the case at bar, undertook to enlarge his case beyond the terms of his written contract by averring in his petition that the contract was entered into with the express understanding that the trustees of the town would take such steps as would make the property-holders liable. In overruling this contention, this court said:

"The duties and powers of municipal corporations are prescribed by statute, and to make them liable, like natural persons, would be to license those who are invested with corporate control to place onerous burdens upon the inhabitants in the way the taxation and otherwise, regardless of the powers and restrictions found in the charter, and by which alone the rights of the corporations must be determined.

"Courts have found it necessary to execute the powers expressly granted, and to refuse to make corporations liable upon implied promises by reason of benefits received. This is done for the protection of the inhabitants of the corporation, and because the only power the corporation has is from the law creating it, and instead of recognizing a more liberal rule, the courts are inclined to hold corporations and their agents within the letter of their grant."

In District of Highlands v. Michie, 32 Ky. Law Rep., 761, Michie sued the district for $150 for fees due for legal services rendered it. He had been employed by the year, under a contract with the district, at an annual salary of $200,

which had been fully paid. Michie admitted that he had no contract with the district to perform the services for the value of which he sued, except under a conversation with one or more of the district trustees. The services for which he sued were outside of his routine duties as the employed attorney of the district, and were, in fact, extra services not covered by his contract, but rendered to and accepted by the district. So, it will be seen that the Michie case, in all of its essential principles, strongly resembles the case at bar. In holding that it was incumbent upon Michie, in order to recover, to show a duly authorized contract of employment with the district, this court said:

"The trustees of a city or other municipal corporation may not, in their individual capacity, employ counsel to represent it in litigation; nor does the fact that an attorney renders services to a municipal corporation entitle him to recover for such services under an implied contract. Municipal corporations must contract through their duly authorized boards, and the individual trustees have no authority to contract for them. (Murphy v. City of Louisville, 9 Bush, 189; City of Covington v. Hallam & Myers, 16 Ky. Law Rep., 128; City of Owensboro v. Weir & Walker, 15 Ky. Law Rep., 506, 95 Ky., 159; Carroll v. City of St. Louis, 12 Mo., 444; Dillon on Municipal Corporations, section 460). Assuming the services of the plaintiff to have been fully worth, in intrinsic merit, the amount claimed by him, it still follows that without a duly authorized contract he was not entitled to recover on a quantum meruit; and the fact that the corporation received the benefit of his services does not, as said before, create a contract by implication."

This doctrine is too firmly established by repeated decisions in this jurisdiction, to need further elaboration. South Belleview-Lot Association v. Town of Belleview, 22 Ky. Law Rep., 541; Lowery v. Lexington, 116 Ky., 157: Perry County v. Engle, Id., 594; Allen County v. Fidelity & Guaranty Co., 122 Ky., 835; McDonald's Adm'x v. Franklin County, 125 Ky., 205; Big Sandy R. R. Co. v. Floyd County, Id., 345; Floyd County v. Allen, 137 Ky., 575; 27 L. R. A. (N. S.), 1125.

It will be seen, therefore, that the case at bar comes squarely within the rule laid down in the foregoing decisions of this court, and that there can be no recovery upon the agreement alleged to have been made with the

Improvement Committee, for the reason that that action was a nullity, and left the original contract standing in full force and effect.

But is an implied promise to pay for this work to be raised by the fact that the city has accepted the work with the full knowledge of the changes that were made and benefits rendered by reason of the work? In Murphy v. City of Louisville, 9 Bush, 194, Murphy constructed a street under a contract which had not been executed in the manner required by the statute, and for that reason no recovery was had against the owners of the property. Murphy, however, sued the city upon the theory, that having derived a benefit from his labor, the law implied a promise on the part of the city to pay for it. But the court rejected that contention in the following language:

"Nor is the corporation liable for the value of the work by reason of any implied promise to pay, upon the idea that the city derived a benefit from it. If so, as previously argued, it would dispense with the exercise of the power conferred by those in authority to execute contracts, and the contractor, or the party performing the work at the instance of any official of the corporation or even inhabitant of the city, could make improvements beneficial to the corporation, and thereby create an implied contract on the part of the city to pay. If the alleged contract is made otherwise than as required by the ordinance, it is not binding; and if not obligatory as a contract, the law creates no promise to pay. The difference between the contract of a private person and that of an officer of a corporation is this: An individual has the right to make, alter, or ratify a contract at his own will and pleasure with the consent of the party contracting with him; or if he stands by and permits others to work for him, and accepts the work, the law implies a promise to pay its value; while an officer of a corporation has no power to make a contract except in the manner pointed out by the statute from which the power is derived. (Zottman v. San Francisco, 29 Cal., 96.)"

And in the Michie case, above referred to and quoted from, this court expressly said that the fact that the corporation had received the benefit of Michie's services, did not create a contract by implication on the part of the city.

Again, in Floyd County v. Allen, supra, where Allen had sued the county for labor and materials furnished in making a bridge, without a contract, this court said:

"The testimony shows that the county judge prior to the making of the improvement went to the place improved and the home of appellee and advised and requested him to make the improvement, and that the justice of the peace in that district also requested it. It is also insisted for appellee that the county should be compelled to pay him the claim for the reason that it made no objection to the work, as it progressed and it reaped the benefits of his expenditure and labor. This presents a very equitable view in his behalf, and would prevail against an individual or private corporation, but the consequence would be disastrous to hold that it should apply to the state or county. To permit the citizen to select his own time, place, and manner, even with the advice and consent of one or two of the officials, in which to furnish material and labor for needed repairs or improvements on a public highway of the county and hold the county responsible for the price charged, upon the ground that it had been benefitted thereby, would be ruinous to the county and have the effect to supersede the power of the fiscal court whose duty it is under the law to manage such affairs.   *   *   *   In the case at bar there was no action of the county court. The judge and a justice of the peace acted privately in the matter."

And in the Hohn case, above referred to, the court used this language:

"The contract was void so far as it attempted to make the lot owners responsible, and there is no implied promise by the city to pay, because the lot owners were never bound—this fact appellees knew when they made the contract. That contract is in writing, and by its terms the appellant, the town, is in no event to become responsible. Neither fraud nor mistake is alleged, and if such an averment had been made, it can afford no relief as against the appellant."

It should be borne in mind that this is not a case where mere restitution is demanded of that which the municipality has unlawfully received, and a restitution would not vary or increase the burden of the taxpayer. In that class of cases recovery is allowed in quasi-contract, because restitution does not impose upon the taxpayer any additional burden beyond his prescribed obligation as

a citizen. But in the case at bar, Schoolfield's contract required the city to pay one-half of the cost of the street and the property-owners to pay the other half, and he is now asking that the city pay, not one-half of the extra cost, but all of it. If the city should be required to pay upon either basis, the taxpayer's burden would be increased to the extent of the payment, above what he had the right to expect under the contract between Schoolfield and the city.

From these abundant authorities we must further conclude that Schoolfield can not recover from the city of Newport upon an implied liability.

This work having been done under the original contract, can Schoolfield recover damages for the alleged breach thereof? Upon that proposition the circuit judge ruled affirmatively; and in doing so, we think he was in error.

Section 17 of the specifications provided as follows:

"All claims for damages must be made in writing to the superintendent of public works and city engineer at the time the damage occurs, or the cause of the claim arises. Unless such claims are so presented, it shall be held that the contractor has waived such claim, and shall not be entitled to receive any pay for same. No extras of any kind will be allowed, unless ordered in writing by the city engineer, and the price for same agreed upon in advance."

It is not pretended that this claim arises under this clause or that appellee has proceeded as is therein required. Nevertheless, we have here an express provision of the contract covering damages and compensation for extras of every kind, with the further provision that they shall not be allowed unless ordered in writing by the city engineer, and the price for same agreed upon in advance. The contract further provided that the work should be commenced "when directed by superintendent of public works and city engineer * * * days after the execution of the contract." Assuming that the circuit judge was right in holding that the contract required the notice should be given within a reasonable time after the execution of the contract on September 10th, 1906, we can not concur in his conclusion that Schoolfield had the right to do this work under the contract, and then claim a measure of compensation different from that provided by the contract. If the city broke its contract by re-

fusing to permit Schoolfield to do the work, it was liable for the breach. But that is quite a different liability from that set up in the petition. Clearly, if the city had declined to carry out the contract, and had refused to permit Schoolfield to build the street, his remedy was in damages for the breach of the contract; and his measure of damages would have been the profit he could reasonably have made in the construction of the street. But since the city made no change in the contract, Schoolfield had no right to assume that he could proceed with the reconstruction of the street under a new contract, or without a contract, and recover from the city in any way different from that provided in the original contract. A party to a written contract will not be permitted to execute his part thereof, and then claim rights in opposition to the contract, in the absence of fraud, accident, or mistake practiced upon him in its execution. Schoolfield's notification to the general council that he could not build the street under the prices called for in the contract, did not, in the absence of an agreement on the part of the city, enlarge or change his rights under the contract. Moreover, Schoolfield having been notified to proceed with the work under his contract as it then existed, he certainly knew from the two notices to that effect, that he was expected to work under the contract or not at all; and having proceeded with his work pursuant to those notices, and having received the pay for his work as called for by the contract, the respective contractual rights of Schoolfield and the city of Newport have been satisfied. Any other claims or obligations upon either side are beyond the contract and unenforcible.

Under any view of the case Schoolfield was not entitled to recover, and the demurrer to his petition should have been sustained; and, the demurrer having been erroneously overruled, the appellant's motion for a peremptory instruction to find for it, should have been sustained

Wherefore, the judgment of the circuit court is reversed, with instructions to take further proceedings consistent with this opinion.