## Schuster v. City Council of Oakdale, et al.

(Decided May 31, 1918.)

### Appeal from the Jefferson Circuit Court (Chancery Division No. 2).

1. Municipal Corporations—Creation of Indebtedness—Ten-Year Bond Plan.—A city of the fifth class, under section 157 of the Constitution, can not in any one year contract indebtedness in excess of the revenue provided for said year without the assent of two-thirds of the voters of the municipality, voting at an election to be held for that purpose, and this is no less true where the indebtedness attempted to be incurred is under the ten-year bond plan, which provides for the assessment of property abutting and fronting on the improvements contemplated, and this property is made primarily liable for the obligation.

2. Municipal Corporations—Indebtedness—Ten-Year Bond Plan.—Under the ten-year bond plan the city is entitled to be fully reimbursed by the property owners for the cost of the improvements on which their property fronts and abuts, but the bonds issued are the obligation of the city and not of the property holders, and this indebtedness must be included in estimating the city's debt under section 157 of the Constitution.

CHARLES CARROLL for appellant.

P. D. CRAWFORD for appellees.

OPINION OF THE COURT BY JUDGE SAMPSON—Reversing.

This is an agreed case instituted to test the validity of a proposed bond issue, by Oakdale, a city of the fifth class, in Jefferson county. Between January 1st and April 1st, 1918, the city council of Oakdale, by various ordinances, provided that certain streets of that city should be improved by grading, curbing, guttering, and otherwise, under section 3643 Kentucky Statutes, known as the ten-year bond plan, whereby the property of abutting owners is in lien to the city for the costs of the improvements.

At the time of the enacting of the ordinances and the letting of the contracts thereunder, the city of Oakdale was encumbered with debt up to the constitutional limit. The entire revenue of the city from all sources for the year 1918 will not exceed sixteen thousand dollars, of which amount about seven thousand dollars will be consumed in current expenses, such as salaries, rents, lights, water, etc. The proposed improvements will reasonably cost and, indeed, are let to a contractor at approximately fifty-eight thousand dollars, hence the proposed bond issue will greatly exceed the revenue for the current year.

Section 157 of the Kentucky Constitution provides in part:

"No county, city, town, taxing district, or other municipality shall be authorized or permitted to become indebted, in any manner or for any purpose, to an amount exceeding, in any year, the income and revenue provided for such year, without the assent of two-thirds of the voters thereof, voting at an election to be held for that purpose; and any indebtedness contracted in violation of this section shall be void."

The question presented by this appeal is, can a city of the fifth class create an indebtedness in excess of its current revenue for the year without the assent of two-thirds of the voters of such municipality, voting at an election held for that purpose, even though the property fronting and abutting upon the improvements be in lien to the city for the debt, and primarily liable therefor?

The plaintiff, Schuster, contends that the contracts made and the ordinances passed by the city council of Oakdale, as above set out, are unconstitutional and void. for the reason that by the passage of the ordinances an unwarranted indebtedness is authorized, and by the making of said contracts an indebtedness is attempted during the year 1918 by the city of Oakdale in excess of the revenue of said city for said year. This is denied by defendants, who claim that as the owners of the property sought to be improved are primarily liable for the direct costs of the improvements and the property improved is in lien to secure payment of the contract price for said improvements, the constitutional prohibition does not apply.

The ten-year bond plan for improving streets, which is the one here attempted to be invoked, was enacted in 1912, and is now section 3643, Kentucky Statutes, divided into thirteen subsections.

Sub-section one of this act, in part, provides:

"The cost and expenses incurred in constructing or reconstructing streets, avenues, highways, sewers and public places shall be paid out of a general fund of the city or by the owners of the land fronting and abutting thereon, as the city council may in each case determine; or the city council may order and direct that two-thirds only of said cost and expenses so incurred shall be paid by the owners of the lands fronting and abutting said improvements and the other one-third paid by the city; but the local assessments shall not exceed fifty per centum of the value of the ground after such improvement is made, excluding the value of the buildings and other improvements upon the property so improved."

Sub-section number three is as follows:

"The original construction or reconstruction of any streets, avenues, highways, alleys, sewers and public places may be made at the exclusive cost of the owners of the lots and parts of lots or lands fronting or abutting or bordering upon the proposed improvements to be equally apportioned by the city council according to the number of front feet owned by them respectively, or in part at the cost of the owners, and in part at the cost of the city, upon the petition of a majority of the property owners of lots or parts of lots, or land abutting or bordering upon the proposed improvement; or the city council may cause same to be done without such petition upon the vote of four members-elect of said council at a regular meeting thereof; or the council may, by a majority vote of any regular meeting thereof, cause any such improvement to be made upon the ten-year bond plan as hereinafter provided."

Sub-section number four is as follows:

"But any work undertaken under the provision of the preceding section, to-wit, upon the ten-year bond plan, is contemplated in accordance with the contract, the work shall be received by the city council and the said council shall order the payment for the same made to the contractor by issuing an order (to) the city treasurer to pay same in full out (of) the 'street improvement fund.' "

Sub-section number five is as follows:

"Whenever any work done hereunder (upon the ten-year bond plan) has been completed and accepted, the city council shall issue the bonds of the city, in sums not to exceed the cost of said improvement, and all expenses in connection therewith, including the expenses and the issual and sale of said bonds, and shall sell the same to the highest bidder after due advertisement at a price not less than par and accrued interest. Said bonds shall be divided into ten series, each series to be as nearly equal as possible, said series to be paid respectively in one, two, three, four, five, six, seven, eight, nine and ten years after date. Said bonds shall be of the denomination of one hundred dollars or multiple thereof not exceeding five hundred dollars, and shall bear interest at a rate not to exceed six per cent per annum, and shall be payable at a Kentucky bank to be designated by the city council."

The substance of sub-section six is:

That the city shall create a fund to be known as the "street improvement fund," which shall be held by the treasurer separate and apart from other funds in his hands, and out of this fund the city shall pay for all such street improvements provided for under the ten-year bond plan.

By sub-section seven, it is provided that the assessments shall be made to meet the expenses of the improvement and the same shall be made upon a flat rate by the front foot upon the property fronting, or abutting, or bordering upon said improvement. This assessment must be made as soon as the cost of improvement is fully ascertained, and the sum assessed against each piece of property and shall be placed upon the tax list of the city against the owners of the property and to be payable to the city treasurer in ten equal annual installments with interest.

The ten-year bond plan, which cities of this class may adopt, is intended to place the burden of the cost of such improvements upon those who derive the greatest benefit, the owners of the property fronting and abutting on the improvements, and is often entirely fair and just. It does not, however, increase, nor was it intended to increase, the debt limit of such cities. Improvements made under this plan must be under the

authority of an ordinance duly enacted by the city council, and the contract must be let and enforced by the city. When the work is completed the money is paid to the contractor from the "street improvement fund" of the city, into which fund all moneys arising from the sale of bonds under sub-section five of the act is gathered. The bonds authorized to be sold are "the bonds of the city," and not of the owners of the improved property. The property owners are assessed in proportion to the frontage owned by each, and this amount is divided into ten equal installments payable in one, two, three, four, five, six, seven, eight, nine and ten years after the assessment, and is placed upon the tax bill of the property owner, and collected like other taxes and at the same time. The city has a lien upon the improved real estate for the payment of the installments as they become due, which lien may be enforced by the city in an equitable proceeding for that purpose.

Obviously such bonds are the obligations of the city, and the city alone is liable thereon, although it may in turn collect the whole thereof from the property abutting and fronting on the improvement made by the expenditure of the money. The city pledges its credit and assumes the debt, nevertheless it expects to be fully repaid by the property holders.

As a further evidence that the legislature in enacting this section of the statutes did not intend to give cities of the fifth class an opportunity to increase their indebtedness beyond the constitutional limitation, we refer to sub-section twelve of the act itself wherein it is provided that, "if it shall be necessary to raise an amount of money for said 'street improvement fund,' which would create an indebtedness greater than the amount which could be met by the levy authorized by law, the city council shall cause the question of such issue and sale of bonds to be submitted to the qualified voters of said city at an election to be held for said purpose, as provided for in section 3637, sub-section 3, of the Kentucky Statutes." In other words, cities of this class, when desiring to issue bonds, or create an indebtedness greater than the revenue receivable from all sources for the calendar year, even where the property abutting on the improvement is primarily liable, must submit the question to the voters of the municipality, and the proposition must receive the assent of at least

two-thirds of the voters voting in said election.  This section of the statute leaves no doubt that the lawmakers had in mind section 157 of the Constitution, fixing the limit of debt to be incurred by a city of this class at the time of the enactment of the ten-year bond plan.

Since the proposed bond issue is for fifty-eight thousand dollars, and the revenue of the city for the year from all sources can not be greater than sixteen thousand dollars, it follows that the constitutional limitation of debt would be greatly more than exceeded. The trial court was, therefore, in error in holding legal and valid the ordinances enacted by the council of the city of Oakdale, upon which the bond issue must rest for support, and a like error was committed in sustaining and adjudging valid and binding the contracts for such improvements.

Judgment reversed.