## Little, et ux. v. Town of Southgate, et al.

(Decided March 23, 1928.)

### Appeal from Campbell Circuit Court.

1. Municipal Corporations.—Contract with municipality has not been let to lowest and best bidder unless all bidders have been invited to bid on the same specifications, and the manner in which the contractor shall be paid is as much a part of the specifications as the material that shall be used.
2. Muncipal Corporations.—Municipality has no authority to make contract in which there is included a different method of payment from that provided for in ordinance authorizing the contract and in the advertising for bids.
3. Municipal Corporations.—Where original ordinance providing for sewer construction in town was invalid in part as permitting excessive indebtedness and subsequent ordinance was passed under Ky. Stats., sec. 3706, providing for issuance of bonds for the sewer construction to be secured by lien on assessments against property without any personal obligation on town's part, contract entered into between town and the contractor who made his bid under the original ordinance, by which new agreement contractor was to accept bonds at their par value, held not void as violating requirement of statute that public work be let to the lowest and best bidder, since amount of town's contract remained payable in money, and not in bonds.

BARBOUR & BASSMAN for appellants.

J. B. MILLIKEN for appellees.

OPINION OF THE COURT BY DRURY, COMMISSIONER—
Affirming.

This is the second appeal of this case. For opinion upon the former appeal, see 221 Ky. 604, 299 S. W. 587. On the first appeal, Little and his wife attacked the validity of the ordinance providing for sewering the town of Southgate for two reasons. First, because the entire town was made into one sewer district, and on the former appeal that question was decided in favor of the town.

Their second attack was because the ordinance providing for the work made the bonds that might be issued to pay for it a debt of the town. They alleged that at that time the town owed $6,000; that the amount of taxable property in the town of Southgate based on the assessment of July 1, 1926, was $1,198,600, and no more; that for the year 1927 the town of Southgate had already levied a tax of 50 cents on the $100 valuation for general purposes, and 12 cents for interest and sinking fund purposes, the latter to provide for the interest on and redemption of a bond issue of the town made subsequent to the adoption of the present Constitution of the state of Kentucky. They alleged, further, that it is proposed in the construction of these sewers to incur an indebtedness of $70,-058.35, and that same will exceed the limit of indebtedness authorized by the Constitution for cities of the population of Southgate. They alleged that no vote of the people had been had or ordered upon the question of issuing the bonds or incurring this $70,058.35 indebtedness, and in the former opinion this second contention was upheld. We pointed out in the former opinion the difference between the case of Schuster v. Oakdale, 180 Ky. 760, 203 S. W. 715, and the case of Castle v. City of Louisa, 187 Ky. 397, 219 S. W. 439. We called attention to the similarity between section 3706, under which a sixth-class town constructs such improvements as these, and section 3643-1 to and including section 3643-7, under which fifth-class towns make improvements of this kind. We showed there that in Schuster v. Oakdale the proposed bond issue was held invalid because it created a personal indebtedness of the city, while in the case of Castle v. City of Louisa the bonds were upheld because the ordinance providing for the improvement merely made the city a collecting agency and imposed upon the city of Louisa no personal obligation. In the case of Gedge v. City of Covington, 80 S. W. 1160, 26 Ky. Law Rep. 273, we held that an undertaking of this kind whereby the faith and credit and personal liability of the city was pledged was void so far as the city was concerned, but that such invalidity as to the city did not operate to relieve the property assessed of the charge on it for the cost of the improvement. We said there that the city, in collecting these assessments, acts as a sort of trustee for the person to whom they are ultimately pay-

able. After our former decision in this case, the town of Southgate amended this sewer ordinance, and by such amendment provided:

"Sec. 3. Said work shall be done at the cost of the owner or owners of lots or parts of lots fronting or abutting on said sewer system. Upon the completion and acceptance of said contract the cost and expense of same shall be assessed and apportioned against said lots and parts of lots and owners thereof according to the front or abutting feet of ground. Said assessments shall be due and payable 30 days after the completion, and acceptance of said work and shall bear interest at the rate of 6 per centum per annum until paid, but any of said property owners may elect within said 30-day period to pay said assessments in ten equal installments under the 10-year bond plan.

"Said bonds shall not be issued upon the faith and credit of the town of Southgate for the payment thereof, but the faith and credit of the town of Southgate shall be pledged for the payment of the sums realized upon the apportionment assessed against the property for the costs of this improvement, and to use all legal means to enforce the collection of the apportionments.

"And all bonds shall be payable and redeemable, not on the faith and credit of said town, but out of and secured by a lien on the assessments to be made and apportioned against said lots and parts of lots or land fronting or abutting upon said improvement. All money paid, received, or collected upon the assessments, as in this ordinance provided, and interest on deferred annual installments, and all money arising from the sale of bonds herein provided for shall be kept by the town treasurer in a separate fund, to be known as the 'Sanitary Sewer Construction Fund,' and said bonds shall be paid out of the amount realized upon said assessments hereinafter to be made."

After so amending its ordinance, the town filed an answer to the petition of Little and wife setting up this amendment, and John B. McLane & Company, who had been the successful bidders, joined in this answer and

agreed "to accept bonds for said work which shall not be a debt of the town, as such, if the court decided that their liens for said work, will be secure under the ordinance, as amended." Littles' demurrer to this answer was overruled, their petition was dismissed, and they have again appealed. In their brief, Little and wife have very succinctly stated their position thus:

> "Where the ordinance providing for the construction of a sewer at the cost of the abutting property owners to be paid for in cash, or on the 10-year bond plan, was held invalid, because the 10-year bond plan created an indebtedness of the city without a popular vote, and where thereafter the council of the city undertook by amended ordinance to limit the 10-year bond plan to a lien against the abutting property owner only, and expressly providing that it should not be an obligation of the city, a contract entered into by the city and contractor, who made his bid under the original ordinance, and before the amendment of the ordinance, would be void because the requirement of the city charter that public work shall be let to the lowest and best bidder would thereby be violated."

The clarity of this statement cannot be improved. Little and wife are contending that, after this ordinance was amended, Southgate should have readvertised the construction of these sewers and should have received new bids, and whether or not that is true is the question that is presented on this second appeal.

Southgate, in the ordering of this improvement, was proceeding under section 3706 of the Statutes, and there is no suggestion that this statute has not been correctly followed, except the contention that to make now a contract with John B. McLane & Company, the original successful bidder, without readvertising, will violate that part of this section which provides:

> "The ordering of such improvement shall be by ordinance of the board of trustees, and the contract therefor shall be awarded to the lowest and best bidder after proper advertisement for bids."

There is no suggestion that this ordinance has not been regularly adopted. There is no suggestion that this work was not properly advertised, or that John B. Mc-

Lane & Company was not the lowest bidder for the work. Little and wife, in their brief say:

"It is clear that the proposition presented to the bidders by the original ordinance is different from the proposition embraced in the proceedings as amended. The former proposition provides for an optional payment by a bond issue that would be an obligation of the city. The final proposition provides for an optional payment by a bond issue that is not an obligation of the city. . . . It may be that bidders, assuming, as this court has in fact held, that the bonds provided for would not be an obligation of the city and would be invalid, may have refrained from bidding, and consequently the competitive bidding required by the statute was not had."

The unsoundness of their argument consists in this, that it is based upon the assumption that the contractor was to be paid for this improvement in bonds, whereas, there is no such provision in the statute. The statute contemplates that this work shall be done under contract let to the lowest bidder, and that the contractor shall be paid in money. There is no provision in the statute by which a contractor can be compelled to accept bonds in payment for his work. Such a provision is contained in section 3102, Kentucky Stautes, under which work of this character is done in cities of the second class, and if such a provision were contained in this section 3706 there might be something in the argument that Little and wife advance, but no such provision appears. According to the provision of section 3706, after this work is completed and accepted, the trustees of the town shall issue the bonds of the town in sums not to exceed the cost of said improvement and all expenses in connection therewith, including the expenses of the issual and sale of said bonds, and shall sell the same to the highest bidder, after due advertisement, at a price not less than par and accrued interest. Thus we see these bonds will have to be offered for sale, and, if the contractor wants them, he will have to bid at that sale, and, of course, if he is the successful bidder, he will be just as much entitled to receive the bonds as any one else that might have bid at the sale, and his proposition, which we have outlined above, merely amounts to a proposal to the town of Southgate to

bid par for these bonds when they are offered. Of course, some one may bid more than he does, and if that occurs he will not get the bonds, but the city will then have sufficient money arising from the sale of the bonds to pay him.

Little and wife argue, and they are correct in that, that it is universally held that a contract has not been let to the lowest and best bidder unless all bidders have been invited to bid upon the same specifications. The manner in which the contractor shall be paid is just as much a part of the specifications as the material which shall be used. The town of Southgate would have no authority to make a contract in which there is included a different method of payment from that provided for in the ordinance and in the advertising.

"The specifications cannot lawfully be altered after the bids have been made without a new advertisement giving all bidders an opportunity to bid under the new conditions. The municipal authorities cannot enter into a contract with the lowest bidder containing substantial provisions beneficial to him, not included in or contemplated in the terms and specifications upon which bids were invited. The contract must be the contract offered to the lowest responsible bidder by advertisement." 19 R. C. L. 1071.

There are numerous cases sustaining this proposition: Capital City Brick & Pipe Co. v. City of Des Moines (Iowa) 127 N. W. 66; Osburn v. City of Lyons, 104 Iowa 160, 73 N. W. 650; Stansbury v. Poindexter, 154 Cal. 709, 99 P. 182, 129 Am. St. Rep. 190; City of Newport v. Schoolfield, 142 Ky. 287, 134 S. W. 503; Reams v. Cooley, 171 Cal. 150, 152 P. 293, Ann. Cas. 1917A, 1260; Anderson v. Board St. Louis Public Schools, 122 Mo. 61, 27 S. W. 610, 26 L. R. A. 707; State v. Toole, 26 Mont. 22, 66 P. 496, 55 L. R. A. 644, 91 Am. St. Rep. 386; Chippewa Bridge Co. v. City of Durand, 122 Wis. 85, 99 N. W. 603, 106 Am. St. Rep. 931; Inge v. Board of Public Works, 135 Ala. 187, 33 So. 678, 93 Am. St. Rep. 20.

The fallacy of the argument advanced by Little and his wife results from their failure to note the distinction between the offer of McLane & Company to do this work for $70,058.35 and their offer to take these bonds at par. These two offers may have been made on one paper at one time, but they are as separate and distinct as if they

had been made at different times by different men living in different counties; but as a result of that confusion, Little and his wife fallaciously assumed the bidder at this original letting bid for this work upon the understanding that it was to be paid for in bonds, and we have pointed out there is no such provision in the statute, and there is nothing in the record to sustain that position: on the contrary, in the petition filed by Little and wife they expressly said that John B. McLane & Company was the lowest and best bidder for the construction of the sewers, and that the tabulated bid submitted by them amounts to a total of $70,058.35, thus plainly showing by their own admission that the contractor bid for this work in terms of dollars, and they further allege that the city proposes to execute a contract with the accepted bidder in accordance therewith. Our former opinion did not hold these ordinances were wholly void. It only held that the provision that this $70,058.35 should be a personal obligation of the town was void. Since the rendition of that opinion by the amendments to its ordinances, set out above, this invalidity has been removed, and the answer of the city in which the contractor joined stated a complete defense to the petition of Little and wife; their demurrer thereto was properly overruled; and, as they declined to plead further, the court did not err in dismissing their petition.

The judgment is affirmed.

The whole court sitting.

### DISSENTING OPINION BY JUDGE DIETZMAN.

I am unable to agree with the opinion of the majority in this case, and, as I believe that the principle on which it is rested is so far reaching in its implications, I deem it proper to express the reasons for my dissent.

On the former appeal of this case we held on the authority of Schuster v. City of Oakdale, 180 Ky. 760, 203 S. W. 715, that the allegations of the second paragraph of the petition justified the injunction which the plaintiffs sought. The prayer of that petition asked an injunction enjoining the town of Southgate from entering into the contract in question on the ground that the ordinance which authorized the contract was void. It follows that the decision on the former appeal necessarily meant that,

under the facts alleged in the second paragraph of the petition, the ordinance authorizing the work was void. Indeed, that is exactly what Schuster case, supra, held. I quote:

"The trial court was, therefore, in error in holding legal and valid the ordinances enacted by the council of the city of Oakdale, upon which the bond issue must rest for support, and a like error was committed in sustaining and adjudging valid and binding the contracts for such improvements."

But little reflection must convince one of the correctness of the court's conclusions in the Schuster case if its interpretation of the statute governing the 10-year bond plan of cities of the fifth class be sound. The ordinance in the Schuster case was void because it authorized an indebtedness beyond constitutional authorization. The majority opinion misses the true basis of the Schuster case. The injunction in that case was not issued because the contractor was to be paid with void bonds. It was issued because the town of Oakdale could not authorize the work which called for the creation of an indebtedness beyond that authorized by the Constitution. And this was necessarily the ruling of this court on the first appeal of this case. The majority opinion here says that the fallacy of the appellants' position on this appeal lies in the assumption:

"That the contractor was to be paid for this improvement in bonds, whereas, there is no such provision in the statute."

The fallacy of the majority opinion, in my judgment, is that it overlooks entirely the immateriality of how the contractor is to be paid. It does not make the slightest difference whether he is to be paid in bonds or by a town warrant. The fact remains that the original ordinance provided for work which costs $70,058.35 to do. The town could not pay this amount out of its current revenues, and under the ordinance as enacted it undertook to discharge this obligation by the creation of an indebtedness. The proposed creation of this indebtedness violated constitutional restrictions *and so the ordinance itself was void,* not because it proposed to pay the contractor in bonds, for I confess it did not, but because it created an indebtedness in violation of constitutional

restrictions. *The ordinance was necessarily wholly void*, despite what the majority opinion says, for the only method of payment provided by it was the creation of an unconstitutional indebtedness. The Schuster case so holds. The Gedge case cited in the majority opinion is not in point. The ordinance there involved, as I read the case, simply provided for the improvement at the cost of the property owner. Thereafter, the property owners petitioned the city to be permitted to pay for the improvement on the 10-year bond plan. The city acquiesced and issued bonds, the payment of which was secured by the credit of the city as well as by the assessments against the property involved. We held that the city could not pledge its credit as such pledge violated constitutional limitations, but to the extent of the assessments pledged to pay them the bonds were valid. But in the case before us, the ordinance itself provided for the issual of the town's bonds to pay for this improvement and, as this created a debt beyond that authorized by the Constitution, the ordinance itself was void. Now, could the breath of life be breathed into this dead thing? Works of public improvement such as that here involved must be let at *competitive* bidding to the lowest and best bidder. Kentucky Statutes, section 3643-3. If this means anything, it means that all bidders shall bid on the same specifications and look to be paid for their work in the same manner. By providing in the amended ordinance involved on this appeal that the town of Southgate should not be liable itself for any part of the indebtedness created by the doing of this work, the city has provided a valid consideration for the work proposed in lieu of the invalid consideration provided for by the original ordinance. The amended ordinance thus changes a vital part of the contract to be entered into with the contractor. The proposed contract is changed just as much as it would have been had the specifications for material been changed. If the latter had been changed, the majority opinion admits that the law would require a new advertisement and a new submission of bids. See City of Newport v. Schoolfield, 142 Ky. 287, 134 S. W. 503. I am absolutely unable to see why the same consequences should not flow where the provision for payment is changed. Business proverbially hates lawsuits. A prospective bidder under the original ordinance might well

have refrained from bidding, knowing, as he must have known from the Schuster case, with the knowledge of which he is charged in law, that the *ordinance under which the work was to be let was void.* He ran the risk of a brutum fulmen if his bid were accepted, or a loss of his remuneration if any one objected after the work had been completed. Cohen v. City of Henderson, 182 Ky. 658, 207 S. W. 4. Who can say what the bids would have been, had the ordinance been valid? The very fact that the successful bidder under the invalid ordinance is willing now to stand by his bid indicates that he did not bid too low at that time. He now has an advantage, the opportunity for which is denied all others who might wish to bid under an ordinance providing for a constitutional payment of the debt to be incurred. To say that this contract is let under competitive conditions is to ignore the facts of the case. It is not a question of a defect in the proceedings involved in the enactment of the ordinance. The ordinance as originally enacted was itself void because it created an unconstitutional indebtedness. If the ordinance be made valid by subsequent amendment, then all bidders should be given opportunity to bid under it as validated. In Preston Land Co. v. Town of Paintsville, 192 Ky. 738, 234 S. W. 445, bids for certain public improvements were invited by advertisement as required by statute. None was received by the day appointed for that purpose. Without readvertisement, bids were solicited by telegrams from certain contractors. It was held that the contract of the successful bidder was void because the invitation for bids had not been readvertised. Of course, the reason for the requirement of readvertisement is that all who wish to bid shall be notified and given an opportunity to bid and thereby competitive bidding be received. The majority opinion in this case, however, ignores this salutary rule. Their opinion comes to this—that although a contract entered into is invalid because the ordinance authorizing it is void, yet a municipal body may make the contract valid by amending the ordinance, although the amendment creates a situation entirely different from that previously existing under the original ordinance, and although bidders are not permitted to bid under the new terms. I can never consent to such a proposition. I am authorized to state that Judges McCandless and Logan concur in these views and this dissent.