## Garrard et al. v. Kinder et al.

(Decided June 21, 1929.)

THOS. D. TINSLEY for appellants.

TUGGLE & TUGGLE for appellee.

OPINION OF THE COURT BY JUDGE DIETZMAN—Reversing.

This suit was brought to enforce apportionments for the improvement of Manchester street in the city of Barbourville against a number of lots abutting on that street, among which was a lot owned by the appellees. In the petition it was averred among other things that, in the event any one or more of the lots involved, including the improvements, was not of sufficient value as that one-half thereof would pay the apportionment levied and assessed against it, then and in that event the contractor was entitled to recover the difference between one-half the value of such lot or lots, including the improvements, and the amount of the apportionment against the same, from the city of Barbourville, which was made a party defendant.

Section 3563 of the Kentucky Statutes, governing cities of the fourth class, so far as pertinent, reads:

"Any assessment for any street improvement as provided in this section which exceeds one-half of the value of the lots or parcels of real estate upon which the assessment is made shall be void as to such excess, but the improvement shall be taken into consideration in fixing the value of such real estate and the board of council shall provide for the payment of any such excess out of the general fund."

In the prayer of the petition the court was asked to decree a sale of each of the lots involved for the purpose of paying the apportionment levied and assessed against such lot, and for judgment against the city of Barbourville in the event any one or more of such lots, with the improvements, did not produce sufficient funds as that one-half the value thereof would pay the apportionment against the same. As to the appellees, certain other specific relief was asked, which is not involved in the present appeal. So far as the appellees' lot is concerned, they defended the action solely on the ground that the appellee, Granville Kinder, had the right to convey a part of the lot in question to his wife, the appellee Mrs. Granville Kinder, so as to require an apportionment to be levied against each of the lots as thus formed from the lot he originally owned, instead of the apportionment against the lot as a whole, which was levied. On this the court adjudged against them. By the judgment the court decreed that the contractor was the owner of the apportionment in question, amounting to $1,270.12, and that the lot as a whole, and not as split by the Kinders, was in lien to pay a part of this apportionment. He ordered the property sold, and of the proceeds he directed that one-half thereof be paid to the appellees as owners of the lot and the other half to be paid to the contractor.

It is thus evident that the court assumed that the apportionment far exceeded one-half the value of the lot, including the improvements, although we are unable to find any proof in the record prior to the entry of this judgment to that effect. The parties, however, are not complaining here of that judgment, and never prosecuted any appeal from it. Indeed, they have acquiesced at least in so much of the judgment as held that the apportionment exceeded one-half of the value of the lot, including the improvements. After the entry of the judgment, the lot, including the improvements, was appraised in the sum of $350, and later sold at a commissioner's

sale when W. T. Garrard, who was one of the partners of the contracting firm which had constructed the street, bid it in at its appraised value. At a term of court subsequent to the one when the judgment was entered the sale was reported by the commissioner, whereupon the appellees filed exceptions to the report of sale, and also over objection an amended answer, the substance of both of which was that they had never been able to discharge the apportionment lien against their property up to that time, since the value of the property had never been fixed, and now that it had been fixed by the sale they wished to pay into court, and did pay into court, the amount for which it had been sold at the commissioner's sale. They asked that the sale be set aside, that it be adjudged that the lien against the property was discharged by the payment they thus made into court, and that this payment be divided, by paying one-half to them and one-half to the contractor as the judgment provided. Over the objections of the purchaser this was done, and from this order this appeal is prosecuted.

Pending the appeal W. T. Garrard has died, but the appeal has been revived by consent in the name of his sole legatee and real representative. It will be noted that the judgment under which the property here in question was sold did not order the lot sold for the purpose of ascertaining its value, to the end that the appellees could, after such ascertainment, pay to the contractors their share of such value and so discharge the apportionment. On the contrary, the judgment ordered the property sold for the purpose of a division of the proceeds. The appellees, although they made a vigorous defense along other lines to this suit to enforce the apportionment against their lot, never presented the question of spoliation, nor did they ask that the court fix in advance of the sale the value of their lot, including the improvements, so that they could discharge the apportionment lien by paying that amount for which their lot was properly in lien. This they should have done, and when they failed to do that, and acquiesced as they did in the judgment of the court, at least in so far as it provided for a division of the proceeds of the sale price, they cannot now, after the sale has taken place, have that sale set aside by paying into court the sale price on the terms set up in their exceptions to the report of sale. That the proper procedure, if the appellees wished to discharge the lien against their lot, was to have the court fix the value of this lot,

including the improvements, in its judgment, is settled by the two recent cases of E. J. Knepple Sons v. City of Clifton (Ky.) — S. W. (2d) —, and Thompson et al. v. City of Williamsburg, 229 Ky. 81, 16 S. W. (2d) 772.

In the former case, the appellants, who had constructed certain streets in the city of Clifton, a city of the fourth class, brought suit to enforce their apportionments, and some of the property owners defended on the ground of spoliation. The applicable statute was section 3563 of the Statutes, which we have quoted above. The court heard evidence on the value of the lots, including the improvements, and then fixed it at certain figures. It then gave the contractors an apportionment lien for one-half of the value as so fixed, and, a judgment against the city for the difference between the apportionment as originally made and the apportionment lien against the lots as fixed by the court. A sale was ordered of the lots to satisfy the liens fixed by the court. At the sale, the lots did not bring the values fixed by the court, and the appellants asked an additional judgment against the city for the deficiency arising out of the difference between the values of the lots as fixed by the court and the values as ascertained by the sale. In denying the appellants such relief we said:

"Appellants take the position that the court should have awarded them a judgment against the city for the difference between the assessments and the sale prices of the lots, and not merely for the difference between the assessments and the values fixed by the court. The argument is that the only purpose in fixing the values in advance is to enable the owner to pay if he so desires; that the laborer is worthy of his hire; that through lack of power on the part of the city they can not recover the full amount of the assessments; that it is the duty of the city to pay them whatever loss they actually sustained; and that this loss is the difference between the assessments and the amount which they will receive from the sale of the lots. . . ."

After setting out section 3563 of the Statutes, we continued:

"This statute plainly provides for fixing the value, and, where there is a pending action for the enforcement of the lien  and  the  question  as  to

whether the assessment exceeds one-half the value of the lots, including the improvement, is properly raised, the only tribunal authorized to fix the value is the court itself. The purpose of fixing the values in advance is not merely to enable the owner to pay, but to define the extent of the contractor's lien so that either the contractor or the owner can know how much to bid on the property in order to protect his rights. It being proper where the question is raised to fix the value in advance, the court must determine the question from the evidence heard. Here the question was raised by the abutting property owners, and issue thereon was joined both by the contractors and the city. On this issue a great deal of evidence was heard. The values were then fixed by the court. The contractors did not except to the judgment. They do not now contend that the judgment was not justified by the evidence then heard. Their only insistence is that the court should have ignored the judgment fixing the values, and have based their recovery on the sale prices of the lots. In the circumstances the judgment fixing the values is conclusive, and the court did not err in refusing to adopt the theory for which the contractors contend. Even should we treat the appeal from the final judgment against the city as sufficient to call in question the prior order fixing the values, it cannot be said that the subsequent sale prices were of such controlling effect as to show that the court erred in fixing the values. The sales were coercive, and not voluntary. Only a few persons are in the habit of bidding at sales for the enforcement of street assessments, and the low prices may have been due to a lack of competition.''

The Thompson case, supra, was a suit under the Declaratory Judgment Act to adjudge the rights of the contractors, property owners, and the city of Williamsburg in connection with the apportionments for certain street improvements in that city. In that suit the court fixed the value of certain lots as to which a question of spoliation was involved. In holding that the court properly fixed such values in that declaratory judgment suit, we said:

"It is suggested by appellees that this proceeding to value the lot in advance of a sale is not proper.

It is essential that the amount of the assessment be ascertained, in order that the property owner may pay it, and the city is not entitled to the test of a sale for a determination of the value of property in cases of this character. The court must value the property and ascertain the correct amount of the assessment in advance of any sale. City of Paducah v. Yancey, 205 Ky. 676, 266 S. W. 351; City of Covington v. Schlosser, 141 Ky. 838, 133 S. W. 987. Cf. Ithaca Trust Co. v. United States, 49 S. Ct. 291, 73 L. Ed. —, decided April 8, 1929. Indeed, a sale is permitted only in the event the landowner fails to pay the assessment finally ascertained to be due.''

In the instant case, when the court entered the judgment it did, the parties knew that the court had found that the apportionment as originally made exceeded one-half the value of appellees' lot including its improvements. Neither the plaintiffs in the suit nor the appellees, who were the defendants, asked the court to place a value on appellees' lot. Although the appellees objected and excepted to the judgment, their conduct in the case makes it perfectly plain that their objection and exception went only to that part of the judgment which held that their lot as a whole was in lien for the apportionment. In so far as the judgment ordered a sale and a division of the proceeds, the appellees acquiesced therein. They have prosecuted no appeal from the former judgment. Under the circumstances, if they wished to have forestalled the sale by paying the amount for which their lot was properly in lien, they should, under the doctrine of the Thompson and Knepfle cases, supra, have asked the court to fix the value of their lot, including improvements in advance of the sale. To permit what was done here would tend to destroy all bona fide bidding at sales of this character, because the purchaser would never know whether he would get the property on which he was bidding or not. A bidder at the sale held under the judgment in this case had the right to assume that it was a bona fide sale for the purpose of a division of the proceeds. He knew that the parties had not appealed from the judgment which so provided. He knew that, at least, if the property brought two-thirds of the appraised value, there was no right of redemption. Therefore, when he made his bid, and it was the successful bid, he had a right, so far as this record discloses, to have

182

the sale confirmed and a deed ordered. It therefore follows that the court erred in permitting the amended answer to be filed, in sustaining the exceptions to the report of sale, and in setting that sale aside. He should have overruled the exceptions, confirmed the sale, and ordered the deed.

The judgment appealed from is therefore reversed, with instructions to proceed in conformity with this opinion.

Whole court sitting.