## Tuggle et al. v. Marsee.

(Decided October 1, 1929.)

(As Modified, on Denial of Rehearing, December 20, 1929.)

652

TUGGLE & TUGGLE for appellants.

BLACK & OWENS for appellee.

OPINION OF THE COURT BY JUDGE LOGAN—Affirming in part and reversing in part.

.Barbourville is a city of the fourth class. The city council enacted an ordinance for the improvement of certain of its streets. A contract was let for the performance of the work. W. R. Marsee, the appellee, was the contractor for the construction of Sycamore street. This contract was made about March, 1921. The original contract provided for a surface of Kentucky rock asphalt, but later the ordinance was so amended as to specify tarvia. On November 18, 1921, the city council passed an ordinance accepting the work done by Marsee on Sycamore street, and an improvement tax was levied by the city against the abutting property owners to pay the cost of the improvement, and this cost was apportioned among the owners of the lots abutting on the street. The amount of the assessment against the appellant Tuggle was $739.38, and the amount of the assessment against the appellant Cole was $700.85.

A contract was also let to the appellee Marsee for the improvement of Pitzer street. This work was completed and accepted by the city council on November 18, 1921. The assessment against the appellant J. D. Tuggle for the improvement on this street was $1,597.37. Suit was instituted by the appellee against Tuggle, Cole, and others to enforce the collection of the amount due against them growing out of the improvement of Sycamore street, and another action was instituted against Tuggle and others to enforce the collection of the amount due growing out of the improvement of Pitzer street. The two actions were consolidated and heard together. In the first-mentioned suit Tuggle and Cole have appealed from the judgment of the chancellor, while in the second-mentioned suit Tuggle alone is appealing. The judgment of the chancellor against Tuggle for the improve-

ment on Pitzer street was $1,597.37 subject to a deduction of $350, leaving a balance of $1,237.37 with interest from December 18, 1921, until paid, and 10 per cent. penalty on the amount. The judgment directed the lien against the property to be enforced and the property sold. The judgment against Tuggle for the improvement. of Sycamore street was $739.78 with interest from December 18, 1921, and 10 per cent. penalty, and the judgment directed the enforcement of the lien and sale of, the property. The judgment against Cole was for $700.-85 for the improvement on Sycamore street with 10 per cent. penalty and interest from December 18, 1921. The judgment directed the lien against the property of Cole to be enforced and the property sold.

The answer of the appellant Tuggle to the first suit consisted of a denial that Sycamore street had been accepted as a public street by the city of Barbourville by ordinance declaring that the street had been dedicated to the city, or that the city had accepted the dedication of the street in any manner. He alleged that the engineer of the city of Barbourville did not make a full, or correct, estimate of the total cost of the improvement of the street showing the total number of feet which abut the property of appellant Tuggle, and that there was no copy of the estimate published in a newspaper in the city, and that such publication as was made did not show the cost of construction of the improvement by the abutting foot. There was a denial, in his answer, that the city had levied a tax on the lot of land claimed by him by ordinance, or otherwise. In addition to these defenses, he elaborately undertook to plead that the construction of the street, its acceptance by the city, and the things done in connection therewith were all pursuant to a fraudulent conspiracy on the part of the appellee W. R. Marsee, the city attorney, S. J. Condon, and members of city council. He alleged that the city attorney was interested in previous contracts with the city and became interested in the contract in question after it was made, and his allegations show that the city attorney had instituted suits to collect the assessments due during the time that he was city attorney, and while he was interested in the contracts for the construction of the streets; that the city attorney advised the city council to pay out large sums of money on contracts in which he was interested, with the result that the city became involved in debt in excess of the revenue of the city which

654

had been raised or could be raised by the highest rate of taxation permitted under the Constitution. He then alleged that the city council was familiar with the acts and conduct of the city attorney, and that it, with W. R. Marsee, H. H. Owens, and S. J. Condon, "entered into a fraudulent and corrupt scheme and collusion among themselves for the purpose of illegally procuring from the City of Barbourville large sums of money and for the purpose of collecting false and exhorbitant sums of money from various land holders, including this defendant, for the construction of street improvements, including the improvement mentioned in the petition, and to prohibit competitive bidding for the construction of such improvements, including the improvement mentioned in the petition, and to award the contract to the said Marsee for the benefit of himself, said H. H. Owens and S. J. Condon, at exorbitant prices, and to frame and formulate the said contracts for the construction of such improvements in such a way as to afford the pretended contractor, W. R. Marsee, H. H. Owens, and S. J. Condon the award of said contracts and opportunities to cover up and conceal the true amount and value of material and the quality thereof, and thereby claim and collect false and excessive amounts for material and labor in the construction of said work, and to relieve the said contractor from doing the work ordinarily done and performed by the contractor incidental to placing of stone and other materials in said work and to include exhorbitant and false sums for work charged on a basis of 'Cost Price Plus 15% Commission,' and among other things the said S. J. Condon pretended to bid for said work, but his said bid was not made in good faith, nor for the purpose of being accepted by the said Council."

He alleged that this fraudulent scheme and collusion existed at the time the contract was made for the improvement of Sycamore street, and that the contract was made for the benefit of Marsee, Owens, and Condon, and that pursuant to such fraudulent collusion it was understood that the specifications should be so framed and drawn as to afford the contractors opportunity to include inferior and faulty materials in the construction of the work and to afford them an opportunity to cover up and conceal the true quality and amount of material used by them, and that by reason of this scheme and collusion the contractors were enabled to collect excessive amounts for material and labor.

The acceptance of the street, so he alleged in his answer, was brought about through the collusion of the city council with Marsee, Owens, and Condon; that the city council appointed members of its own body as a street committee to examine and report on the construction of street improvements, and that this committee, when it examined the streets, knew that Sycamore street had not been constructed as required by the plans and specifications and knew that it contained faulty material and inferior work with quantities of defective material, and that the faulty material was pointed out to the committee, and that the street committee stated that it would not accept the work in its then condition, but that the committee reported to the city council that the work had been completed in accordance with the plans and specifications and recommended that it be accepted; that the committee knew at the time that the work had not been so completed, and that its report to the city council was false; and that the city council knowing of the falsity of its report accepted the street.

The answer of Cole is substantially the same as the answer of Tuggle, with the addition that he alleged that the property owned by him abutting on Sycamore street at the time of the acceptance of the street was not worth double the amount of the assessment. He alleged that the city council appointed appraisers to appraise the lot, but no appraisement was ever made.

In his answer to the second suit, the appellee Tuggle alleged that the property which he owned and against which the assessment was levied did not abut on Pitzer street, but that it abutted on a passway which was not a public way of the city. His attempted plea of fraud in the second suit is substantially the same as in the first. The answers were controverted by reply. By amended answers it was alleged that the contractors excavated large quantities of earth and changed the grade of the streets, making the cost several hundred dollars more than it should have been if the grade had not been changed, and that the new grade was not as suitable as the original grade. The amended answers were controverted by reply. By a rejoinder the appellants go more into detail about the acceptance of the streets, and allege that the street committee stated to the appellants and other property owners that the streets would not be accepted until the property owners were given further time to file a protest against their acceptance. The

streets were accepted, so it is alleged, without giving appellants an opportunity to protest.

There are six large volumes of evidence, and the court has patiently gone through the transcript to ascertain whether there is any fact proven that sustains the allegation of fraud and collusion. We conceive that to be the main, if not the only, question in the case, because section 3573, Ky. Stats., among other things, provides: "Any protest against the acceptance of the improvement or the estimated cost thereof shall be made in writing to the committee, and be transmitted by said committee to the council, together with a written report of the committee accepting or rejecting the work accordingly as it may be of opinion that the work had or had not been done, and the cost thereof estimated in accordance with the ordinance and the contract therefor."

Section 3574, Ky. Stats., among other things, provides: "The determination of the board of council shall be conclusive and binding on all parties and shall not be questioned or contested in any court, except on the ground of fraud or collusion on the part of the council."

Unless the appellants have established by the evidence that the contract, the construction or acceptance of the streets was fraudulent, they must fail on this branch of the case. Much of appellants' brief is devoted to the evidence showing that H. H. Owens, city attorney, was interested in the contract for the construction of the streets in question. Whether it be wise or otherwise, the law contains no prohibition against a city attorney in a city of the fourth class becoming interested in contracts for the improvement of the streets. It was so held in the case of Commonwealth v. Willis, 42 S. W. 1118, 19 Ky. Law Rep. 962. This opinion was handed down many years ago, and the General Assembly has met many times since then, but it has not changed the provisions of section 3484, Ky. Stats., relating to the subject.

The street committee examined the streets after they were constructed, and there is some proof tending to show that defects in the construction were pointed out to it, but the appellants did not file any written protest with the street committee against the acceptance of the streets. If they desired to protest, the law is clear that the protest must be filed with the street committee and by it reported to the city council. It is contended by appellants that they were misled by the statements of the street committee, but that is a question of fact that was

determined adversely to them by the lower court, and we are not authorized by the evidence before us to disturb that finding.

Much of the evidence is devoted to showing that there were defects in the construction of the street, and we are persuaded of the truth of the position of appellants that the construction was not fully up to the specifications; but this does not necessarily mean that the defects were brought about, or caused, through fraud or collusion. The drainage was poor and the water stood on the street in front of the property of the appellant Tuggle. But this only shows that the work was not properly done. It does not establish fraud. All men are presumed to act honestly until the evidence discloses that their acts have been otherwise. Hurst v. Duff, 156 Ky. 218, 160 S. W. 953. We deem it unnecessary to further pursue the evidence as it relates to defects in the construction of the streets. We are only concerned in looking for evidence of fraud on the part of the city council.

The grade was first established by ordinance, and later it was found necessary to do more excavating than had been contemplated; but the city council, by ordinance duly passed, accepted the work after it had been finally completed. There is no evidence of fraud in connection with the modification of the grade.

Some question is made because the street committee made its report on the evening of the day that it had made its inspection. It is established that only three members of the council were present, and that they, in connection with the mayor, voted to accept the streets. It appears, from the evidence, that at this particular time the city council was in a row, and some of the members were refusing to meet with the other members. It is not contended that any of the members did not have notice of the meeting. We are unwilling to say that the conduct of the city council in accepting the streets constitutes any evidence of fraud.

It is insisted that the contract originally called for a Kentucky rock asphalt surface which was later changed to tarvia. It appears from the evidence that Kentucky rock asphalt could not be obtained on account of shortages in the supply of the material, and that the city council thereafter changed to a different material. The city council, with the consent of the contractor, was within its rights in making the change.

Another ground of fraud which appellants attempt to establish by the evidence is that the cost of labor and material was entirely too high. That question was precluded by the acceptance of the streets without protest.

It is contended by the appellant Tuggle that there is a charge against him for the improvement of Pitzer street amounting to $267 for a drain tile when there is no drain tile on Pitzer street. The drain tile was on Sycamore street, but the evidence shows that water from Pitzer street passed through this tile, and for that reason a part of the cost of the drain tile was apportioned to Pitzer street. That was not improper. Drainage was necessary on Pitzer street, and if the water could be collected in a drain tile which had been laid on Sycamore street, it was for the benefit of Pitzer street as well as for the benefit of Sycamore.

The appellants rely on a number of cases decided by this court wherein it has been held that the establishment of a grade is legislative in character, and that it may not be delegated to a city engineer. It has been so held in the case of Hydes & Goose v. Joyes, 67 Ky. (4 Bush) 464, 96 Am. Dec. 311; Town of Hardinsburg v. Mercer, 172 Ky. 661, 189 S. W. 1117; Zable v. Louisville Baptist Orphans' Home, 92 Ky. 89, 17 S. W. 212, 13 Ky. Law Rep. 385, 13 L. R. A. 668; and other cases. The appellants do not bring their case within the rules announced in these decisions. It is not contended that the city council did not fix the grade. The only contention is that the contractor found it necessary to do a greater amount of excavating than had been expected when the estimate was made. That is not changing the grade of a street.

Without going further into the matter, yet recognizing that appellants have reasons to complain, we must conclude that they are without remedy in these proceedings, as there has been no evidence showing fraud or collusion on the part of the city council, or those interested in carrying out the contracts.

It is insisted on cross-appeal that the court allowed a deduction from the amount of the levy against the appellant Tuggle. In view of the conclusions we have expressed, the contention has force, but counsel for appellee admits that the appellant Tuggle was entitled to some reduction, and as the matter is thus not controverted, we will allow the reduction made by the lower court to stand.

This leaves but one other question, and that is the one raised by Cole in his answer that the value of the lot owned by him was not double the amount of the assessment against it. Any part of an assessment in excess of one-half the value of the lot is void. The uncontradicted proof in this record appears to show that the value of the lot belonging to Cole did not equal the amount of the assesment against the lot. Section 3563, Ky. Stats., among other provisions contains this language: "Any assessment for any street improvement as provided in this section which exceeds one-half of the value of the lots or parcels of real estate upon which the assessment is made shall be void as to such excess, but the improvement shall be taken into consideration in fixing the value of such real estate and the board of council shall provide for the payment of any such excess out of the general fund."

The assessment for street improvements against a lot may not exceed one-half the value of the lot and improvements thereon. To the extent of the excess the assessment is void. The lot owner can be required to pay no greater sum than one-half the value of the lot including the improvements thereon, if any. The lot owner is entitled to have determined the amount which he is required to pay, and that can be done only by the ascertainment of the total value of the lot and improvements. The law is silent as to when or how the valuation shall be determined, but in this case the appellant Cole raised the question by his answer, and proof was produced tending to show the value of the lot. The chancellor should have fixed the value of the lot in his judgment, and the assessment which could be collected from the appellant Cole would have been automatically arrived at. It is probable this was an oversight on the part of the chancellor, but the property of Cole cannot be sold until he is given an opportunity to pay the legal assessment against his lot. In the case of Garrard et al. v. Kinder et al., 230 Ky.——, 18 S. W. (2d) 1013, 1014, this court, in considering the provisions of section 3563, Ky. Stats., above quoted, said: "That the proper procedure, if the appellees wished to discharge the lien against their lot, was to have the court fix the value of this lot, including the improvements, in its judgment, is settled by the two recent cases of E. J. Knepple Sons v. City of Clifton (Ky.) 19 S. W. (2d) 1070, and Thompson et al., v. City of Williamsburg, 229 Ky. 81, 16 S. W. (2d) 772."

660

In view of the fact that the taxpayer is entitled to have a correct tax bill submitted to him before he can be taxed with penalties and costs, and in view of the further fact that it is admitted that appellant Tuggle was entitled to a credit on account of defective construction, it is insisted that he should not be charged with penalties and costs. The cases relied on by appellant are not in point, because they relate to erroneous assessments, while in this case the credit was allowed on account of defective construction, and the credit was upheld by this court solely because it was admitted in briefs for appellees that appellant Tuggle was entitled to a credit.

Judgment is affirmed as to Tuggle, and reversed as to Cole, and remanded and affirmed on cross-appeal. The cost in this court will be divided, one-fourth to appellees, and three-fourths to appellant Tuggle.