## Hearne v. City of Catlettsburg et al.

(Decided June 16, 1931.)

MARTIN & SMITH for appellant.

GEORGE F. GALLUP and DAVID BROWNING for appellees.

OPINION OF THE COURT BY JUDGE WILLIS—Affirming.

J. C. Hearne, an abutting lot owner, instituted an action against the city of Catlettsburg and a paving contractor to enjoin the alteration of the plans and specifications for the paving to be done in front of his lot. A final judgment was rendered in favor of the city and the contractor, from which the plaintiff has prosecuted the present appeal. The case was considered by all the judges of this court on a motion before the writer of this opinion for a temporary injunction, and in disposing of the motion the facts were thus narrated:

Catlettsburg, a city of the fourth class, on August 5, 1930, adopted a resolution declaring the necessity for the improvement of certain streets constituting the Midland Trail (U. S. Routes 23 and 60) through the city, to the intersection of Oakland avenue with the south line of Plum street. The reconstruction was to be done in accordance with chapter 113 of the Acts of 1916. (Sections 3562 to 3577, inclusive, Ky. Statutes, 1930 Ed.) The resolution provided that the work was to be done according to plans and specifications to be furnished and approved by the state highway commission, upon grades, levels and widths established by that body. The resolution recited that $60,000 had been pledged by the state highway commission and some private contributors which was to be applied and credited upon the cost of the reconstruction of the streets mentioned, and the balance of the cost was to be assessed against the abutting landowners in the manner provided by the statutes applicable to the situation. The resolution was posted in several public places in the city, but was not published in any newspaper.

On August 25, 1930, by unanimous vote of all members of the city council, a resolution was adopted reciting the conditions confronting the city and requesting the state highway commission, as soon as possible, to let the contract for the improvement. On September 3, 1930, an engineer was employed to make plans and specifications for the proposed work to be sent to the state highway commission for its approval. An ordinance had been passed by unanimous vote on September 1, 1930, which, after a recital of the conditions creating the urgent necessity for the improvement, provided for the paving of the streets mentioned (1) "with brick upon a concrete base, or (2) with one course concrete, with curb and gutters installed, or (3) by resurfacing with asphalt

upon suitable base, or (4) with any other material, upon such grades, levels and widths as might be established by the State Highway Commission.''

The ordinance, on September 30, 1930, was readopted by unanimous vote, and was duly printed in a paper published in the county and circulating in the city. It contained a provision that the work was to be done in accordance with chapter 113 of the acts of 1916, on the ten year payment plan, ''at the exclusive cost of the owners of property fronting or bordering and abutting thereon as provided in said statutes and in accordance therewith.''

On September 5, 1930, the state highway commission approved the action of its chief engineer in sending to the city of Catlettsburg ''detailed map and plans on this proposed work.''

On September 17, 1930, the city clerk was directed to advertise for bids on the proposed work ''according to the plans and specifications of the State Highway Department.'' A ''notice to contractors'' was published for two weeks, calling for bids to be submitted on October 1, 1930, for the construction and rebuilding of streets on Center street, Division street, Louisa street, and Oakland avenue, a distance of 13,000 feet, the approximate quantities being:

''Concrete paving 24,200 square yards,

''Concrete curb and gutter, 1,200 feet,

''Resurfacing old brick streets, 14,666 square yards,

''Rebuilding Brick streets on new base, 9,400 square yards.''

It should be noted that the city had accepted the plans and specifications of the state highway commission; and they contained no provision that the plans might be changed, or the entire work done with a single material at the unit prices bid. Each bidder was bound to assume that the work would be done partly with concrete, partly with asphalt, and partly with brick, in the relative proportions approximated in the advertisement.

The contract was awarded on October 1, 1930, to the Ashland Construction Company, and on October 14, 1930, a formal contract was entered into between the city and the contractor for the work on the estimated quantities at the unit prices bid. The ordinance awarding the contract recited that the total price of the work was $128,-

590.88, and the contractor gave bond with a corporate surety. The formal contract provided that the total estimated cost of the work at the unit prices was $128,-590.88, but the unit prices bid and incorporated in the contract were to govern. Payment was to be made from the voluntary contributions aggregating $75,000 and from assessments against the abutting property, except property owned by any of the contributors which was to be free of assessment. Boyd County, the C. & O. Railway Company, the Ohio Valley Electric Railway Company, and the Midland & Atlantic Bridge Company were included among the contributors, and each owned land abutting upon the improvement. It is not claimed, however, that any donation was less than the potential assessment against the lands of the donor, if the donation had not been made voluntarily.

The contract, on December 9, 1930, was approved by the state highway commission.

On November 14, 1930, the city council unanimously agreed to change the plans so as to provide for a concrete road the entire length of the improvement. The contractor had already commenced the work. On March 9, 1931, the city council finally adopted an ordinance providing for the construction of new sidewalks along the street improvement rendered necessary by widening the old streets, to be paid for out of the contributed funds.

It was determined on the facts recited that a temporary injunction should be granted to the plaintiff to prevent the defendants from changing materially the plans for the paving upon which the contract was let; and if such change was deemed necessary, the portions of the paving to be changed would have to be readvertised and relet in accordance with the statute. Thereupon the circuit court issued a temporary injunction in accordance with the order made, and the city, with the consent of the contractor, proceeded to readvertise and relet the contract to conform to the requirements of the law. A different contractor was awarded the work, and the subsequent proceedings were brought into the record. The plaintiff concedes that the circuit court conformed to the principles enunciated in the order made by the writer when the case was before him on the application for a temporary injunction but since such orders do not constitute authority, and are not binding except for the temporary purpose to be served, he has brought the record here for a final and authoritative adjudication of

the case on the merits. Hence we proceed to consider the various objections urged to justify the relief sought.

1. The first attack leveled against the contract was that the attempt to alter the established grades would result in an incidental injury to the abutting land. The power of the city to establish, raise, or lower the grades of streets is undoubted. Ky. Stats., sec. 3560 and section 3562. City of Owensboro v. Hope, 128 Ky. 524, 108 S. W. 873, 33 Ky. Law Rep. 375, 15 L. R. A. (N. S.) 996. If the property of an abutting owner is damaged by a change in grade of a street, he may have a remedy, but he may not restrain the exercise of the authority of the legislative boards, or the execution of the plans for an improvement of the streets. Bodley v. Finley, 111 Ky. 618, 64 S. W. 439, 23 Ky. Law Rep. 851; Herndon v. Brawner, 180 Ky. 813, 203 S. W. 727; Bayes v. Town of Paintsville, 166 Ky. 688, 179 S. W. 623, L. R. A. 1916B, page 1027.

2. The legality of the whole proceeding was questioned because the initial resolution of necessity for the improvement was not published in any newspaper. The statute provides: "Such resolution shall be published in one or more issues of a newspaper published in the county in which such city is located, if any, and if there be no paper published in said county, then in some paper which circulates in said city, at least thirty days before the ordinance ordering such improvement shall pass the board of council." Section 3570, Ky. Statutes, 1930 Edition.

The statute further provides how fifty per cent. of the property owners may petition for a particular material, or protest against the making of the improvement, but the council, by a two-thirds vote, is given power to proceed in disregard of any such petition or protest.

The statute was construed in the case of Wait v. Southern Oil & Tar Co., 209 Ky. 682, 273 S. W. 473, where it was held that the power of the council by a two-thirds vote of the members-elect to proceed in defiance of a protest was not consistent with the contention that failure to pass or to publish a preliminary resolution invalidated the action taken with the vote of all the members, or with as many as two-thirds of the members-elect.

Here all the members of the council voted for the improvement. In the Wait case, the question came up after the work had been completed, but obviously the same principle applies under circumstances such as were

shown in this case where the work had proceeded for several months, and its necessity was acknowledged by all the members of the council supporting it, and was asserted officially in proceedings for the paving.

3. The point was made that the plans and specifications were not adopted with sufficient certainty to identify them. The plans and specifications were frequently mentioned in the records of the council, and the approval and acceptance of the city was clearly manifested. There was no confusion· as to the plans and specifications· intended to be used in the work, and the petition failed to point out that any mistake had been made, or how the plaintiff could be helped by having them formally spread on the minute book. Cf. Baker v. Combs, 194 Ky. 264, 239 S. W. 56. Since the case was considered on the motion for a temporary injunction, the city council has properly identified the plans and specifications, and has adopted the curative legislation that the exigencies reasonably required. Cooley Cons. Lim. (6th Ed.) p. 456; 17 C. J. p. 402; Cf. 12 C. J. sec. 795, p. 1095; Eckles v. Wood, 143 Ky. 451, 136 S. W. 907, 34 L. R. A. (N. S.) 832.

4. Another objection was to the action of the council respecting sidewalks. It is said the original ordinance for the improvement was limited to a reconstruction of the streets, and to add a substantial sum for sidewalks was unauthorized. The power to construct sidewalks is as broad as that to build streets, and conferred by the same statutes. The plans called for a change in the old streets by widening, and such changes necessarily affected the old sidewalks constructed adjacent to the roadway. The amount was not large and may be regarded as merely incidental to the contemplated improvement. In any event, it affected only the expense that could be embraced in an apportionment of the cost against the abutters, and would not justify the court in interfering with the work. Compare Wendt v. Tucker, 185 Ky. 626, 216 S. W. 61.

5. The contract was assailed because donations were accepted in lieu of assessments against particular owners. If an abutter paid voluntarily a sum in excess of his potential liability to assessment, no other person could be harmed. He ought rather to rejoice for he would be benefited to the extent his own assessment should be lessened. It is a maxim of the law that commends itself to practical common sense that no one may be heard to complain of anything that does not concern him, or that

does not affect adversely his rights. 12 C. J. sec. 177, page 760. Downing v. Town of Chinnville, 237 Ky. 121 34 S. W. (2d) 961.

6. The contention was advanced that the ordinance was illegal because of variance from the statute respecting the cost of intersections. But that ordinance refers to the statute for the rule to govern the apportionment of the cost, and if a departure in that respect should be attempted the plaintiff then could invoke his remedy. The facts alleged do not bring the case within the authority of the decision in City of Elizabethtown v. Purcell, 219 Ky. 554, 293 S. W. 1096, where a jurisdictional fact was lacking, and an assessment was attempted to be predicated upon a petition of property owners that did not comply with the statutory conditions. Such a case is not made here.

7. The application of the donations to the cost of the improvement was in the discretion of the city council. It is not necessary to determine the details of how it should be done. If the discretion of the council should be abused so as to injure the donors or the abutting owners, they would not be without a remedy. But obviously the whole improvement need not be held up pending a determination of that matter. It has no place at this time in an action of this character. The power of the city to assess abutting lots is limited to one-half the value thereof. Ky. Stats., sec. 3563; Davis & Co. v. McDonald, 200 Ky. 828, 255 S. W. 833. It is not alleged that such limitation has been or will be exceeded. If an excessive assessment should be attempted, relief may be granted when the city sues to enforce it, or the owner may maintain an action in equity to reduce the excessive charges, Thompson v. City of Williamsburg, 229 Ky. 81, 16 S. W. (2d) 772; Garrard v. Kinder, 230 Ky. 176, 18 S. W. (2d) 1013; Knepfle Sons v. City of Clifton, 230 Ky. 408, 19 S. W. (2d) 1070; Tuggle v. Marsee, 231 Ky. 650, 21 S. W. (2d) 1022.

8. The temporary injunction was granted upon these grounds:

The contract in question was awarded upon competitive bidding. The call for bids provided for three types of construction, and the contract was so awarded. The city council thereafter made a radical change, eliminating two types of the work bid upon at the letting, and requiring the entire improvement to be constructed of concrete. The proportion of the work

changed was manifestly substantial. The contract called for 2,825 lineal feet of street to be constructed of brick upon concrete base; 5,290 feet of one course of concrete; and 3,935 feet of resurfacing with asphalt upon the old brick construction. It may be assumed that the change was a wise one, but since the council under the circumstances possessed no power to make it, the attempt to do so was invalid.

In Nell v. Power, 107 S. W. 694, 32 Ky. Law Rep. 952, it was held proper to permit the abutting landowners to determine which of two material specified should be used. In Lindsey v. Brawner, 97 S. W. 1, 29 Ky. Law Rep. 1236, a change was made from brick to macadam. In Maysville v. Davis, 166 Ky. 555, 179 S. W. 463, the width of a proposed street was reduced, and a street car track was left unpaved. In L. & N. R. Co. v. Southern Roads Co., 217 Ky. 575, 290 S. W. 320, some work was omitted from the contract, although included in the ordinance. And in Tuggle v. Marsee, 231 Ky. 650, 21 S. W. (2d) 1022, a contract for rock asphalt surface was changed to permit the substitution of tarvia. In all of these cases the question came up after the work had been done and accepted by the city, and the court permitted the assessments to be enforced. If the bidders had known that the entire street was to be constructed of one material it might have made a difference in the bidding. The requirement for competitive bidding would be of small value, if a new contract, materially different from the one awarded, could be negotiated by the parties. The contractor did not complain, and the city insisted that the change was absolutely necessary. But the abutting landowners were being subjected to an assessment for an improvement different from that upon which the bids had been submitted. They were entitled to have the contract as advertised and let to the best bidder carried out substantially according to its terms. Little v. Town of Southgate, 223 Ky. 735, 4 S. W. (2d) 711. There was no provision or reservation made for an extention of the unit bids to the whole improvement, and the bidders did not compete for the contract on the character of construction that later was attempted to be ordered. They bid for three kinds of construction, and it was sought to eliminate entirely two of the materials, and to extend the other so as to embrace the whole work. If the bidders had been advised that the entire improvement was to be made of concrete, it might have made a material dif-

ference in the unit price bid even for that type of construction. Hence the attempt of the city council to make a change in the respects stated by the resolution of November 14, 1930, was unauthorized, and its enforcement was properly enjoined.

But the readvertisement and reletting of the work upon the new plans and specifications was all that the plaintiff could demand, and since the new proceedings were in strict conformity with the orders of the court, no further relief was available or asked. It follows that the subsequent dismissal of the action was proper.

The judgment is affirmed.