## City of Raceland et al. v. McCoy et al.

(Decided May 4, 1934.)

(As Modified on Denial of Rehearing June 26, 1934.)

JOHN T. DIEDERICH for appellants.

J. D. ATKINSON for appellees.

OPINION OF THE COURT BY JUDGE DIETZMAN—Affirming in part and reversing in part.

This action was instituted by the appellees, property owners in the now city of Raceland, against the town of Chinnville, which, by chapter 109 of the Acts of 1930, was raised from a sixth class town to a city of the fifth class, with its name changed from that of the town of Chinnville to that of the city of Raceland. The mayor and members of the city council and T. C. Cloran, the contractor, were also made parties defendant. The purpose of the suit was to have certain street paving assessments apportioned against the property of the plaintiffs declared void, or, failing that, to have the assessments corrected by the elimination therefrom of certain items of costs of the work for which the assessments were apportioned. The property owners sued on behalf of themselves and all others similarly situated.

The petition charged that through "mistake or collusion and fraud" on the part of the board of trustees of the town of Chinnville, the city engineer and the contractor, Cloran, an overcharge had been made for certain bridges built as a part of this street improvement

program, also an overcharge for excavation and that certain other improper charges in connection with the work had been made. It is further alleged that there should be an adjustmnet made in the apportionments because of the elimination from the improvements ordered by the improvement ordinance and includ^d within the contract covering such improvements of one whole street and part of another. The answer of the defendants denied all the allegations of the petiton, except those setting out the jurisdictional facts and steps necessary to complete a lien against the property holders for the street paving and improvement work done. It pleaded affirmatively that the contract and the apportionment of the costs of the improvement were entered into and carried out in strict compliance with the statutes governing such matters. It was further pleaded that the plaintiffs were estopped to question the assessment and apportionment because they had knowledge of them and the manner in which the apportionment would be made by the council, and had permitted the apportionment ordinance to be passed after the work had been completed and accepted without any protest, and had allowed bonds to be issued (the work having been done on the ten-year bond plan) without questioning the action of the board until this suit. An amended answer put in issue the right of the plaintiffs to sue for anybody other than themselves, and further pleaded as a bar the judgment in the case which reached this court under the style of Downing v. Town of Chinnville et al., 237 Ky. 121, 34 S. W. (2d) 961. This amended answer further pleaded laches on the part of the plaintiffs in asserting their alleged rights sought to be vindicated by this action. After a large amount of proof had been taken, the trial court sustained the method of apportioning the cost of the street improvements in question, but eliminated from such cost that of certain items entering into the work. It also adjusted the apportionment because of the elimination from the work authorized by the improvement ordinance of one street and a part of another. The trial court then ordered that a special commissioner be appointed to reapportion the cost of the work as thus corrected by the elimination of the items in question. The judgment also adjudged that the engineer's fee, which was 5 per cent. of the total cost of the work, and which had been paid him, should be reduced to 5 per cent. of the corrected cost of the work, the contractor to stand the loss as between him

and the property owners, and further ordered the contractor to produce in court so many of the bonds theretofore issued for the work, and which he had taken in payment therefor, necessary to bring them into the proper relation to the cost of the work as corrected by the court's eliminations. From that judgment, this appeal is prosecuted by the city and the contractor.

The questions presented by this appeal are: (1) Whether or not the plaintiffs can, after the acceptance of this work by the city council, maintain this suit; (2) whether or not the pleas of res judicata, estoppel, and laches were rightly overruled by the trial court; (3) whether that court correctly eliminated any items of the cost of the work, and, if so, which; (4) whether the trial court erred in adjusting the apportionment because of the elimination from the work authorized by the improvement ordinance of one street and a part of another; (5) whether its judgment as to the engineer's fees was right; (6) whether the trial court erred in appointing a special commissioner to reapportion the corrected cost of the work; and (7) whether or not the trial court erred in requiring the contractor to produce in court sufficient bonds to absorb the difference in the cost of the work as paid him and as corrected by the court.

(1) It is argued that the city having by ordinance duly accepted the work here in question, its action is final and cannot be set aside or questioned except on the ground of fraud and collusion, that the petition in the instant case, though it does charge fraud, collusion, and mistake, alleges no facts to show such fraud, collusion, and mistake, and hence is defective because embodying only the conclusions of the pleader, and that there is no evidence in the case to show any fraud or collusion, for all of which reasons the trial court erred in not dismissing this petition. It is true that in the later cases of this court, such as the City of Maysville v. Davis, 166 Ky. 555, 179 S. W. 463, Henderson v. Carey-Reed Co., 180 Ky. 449, 202 S. W. 882, Tuggle v. Marsee, 231 Ky. 650, 21 S. W. (2d) 1022, the right of a property owner to question the action of a city council, after it has accepted the work done under a street improvement ordinance, has seemingly been confined by the language used in the opinions to the state of case where fraud and collusion are alleged. However, in the earlier case of Town of Russell v. Whitt, 161 Ky. 187, 170 S. W. 609, the right of a property owner to thus question the

action of the city council is more broadly expressed and includes the ground of mistake as well as those of fraud and collusion. In the case of Lovelace v. Little, 147 Ky. 137, 143 S. W. 1031, it is apparent that a correction was allowed for mistake, the proof as to fraud or collusion not being adequate. It may at once be said as to the proof in the instant case that it falls far short of establishing fraud or collusion, but it certainly establishes mistakes on the part of the city engineer as to certain estimates and allowances, and further establishes that the city council in accepting the work relied entirely on the certificates and representations of its engineer. As will presently be seen, the eliminations which the court ordered in the cost of the work in the main covered mistakes made by the engineer in the estimates of the amount of concrete used and excavations made and in not applying the proper measure of compensation (the work having been done on a unit basis) to certain items of the work. We are convinced that the later opinions of this court did not by their language mean to eliminate or to take away from the property owner the right established by the Town of Russell and the Lovelace Cases, supra, to have such mistakes as appear in this case corrected at least where a town of the sixth class is concerned, since there is no provision in the charter of such class cities, as there is in charters of other class cities, for any notice to be given to the property owners that the trustees of the town are about to accept the work, or any provision for an opportunity on the part of such property owners to file objections and protests to the work being accepted or the cost as certified being approved and payment made therefor, or bonds issued if the work be done, as here, on the ten-year bond plan. Unless the property owner has the remedy here pursued, he will be at the mercy of the city council and without any provision in law for him to have a hearing or to make any effort to correct any injustice done him. It is urged, however, that the case of Wilson v. Blanton, 226 Ky. 518, 11 S. W. (2d) 127, is in conflict with these conclusions. In that case, it appears that the contest was over whether the work had been done according to the plans and specifications and whether the contract for it was void because of certain antagonistic interests of the contractor. Not only did the property owners stand by and see the work done without protest because of which this court intimated they would be estopped to question it, but also the prop-

erty owners were actually given a hearing before the trustees of the town accepted the work. But here, there was no question about whether the contract for the work was valid or not, or whether the work done had been done in accordance with the plans and specifications. The question was whether the method of calculation of the payment for such work and the basis of such calculation were correct or not. To say that if the trustees make a mistake in such state of case, there being no opportunity for the property owner to call their attention to such mistake before they accept the work and make the apportionments, there is no way to correct such mistake, would be to shock the conscience. The Blanton Case did not go so far. It is not in conflict with the views herein expressed. It is true that the petition in the instant case pleaded only conclusions of the pleader; but no objection was made to the same by the defendants in the lower court. They went to trial on the issues of fraud, collusion, or mistake. Each side introduced an abundance of proof to sustain their respective contentions regarding these issues, and it is now too late after judgment to complain that the petition was defective in pleading conclusions rather than facts. We therefore on this first branch of the case determine that the plaintiffs had the right to maintain the present suit.

(2) Did the court err in disregarding the pleas of res judicata, estoppel, and laches? We think not. First, as to res judicata. The case of Downing v. Town of Chinnville, supra, relied upon as a bar to the present suit, went off on a demurrer to the petition. That judgment was affirmed in this court on the ground that the petition was defective, because of omitted allegations. A judgment on such a petiton is no bar to another action in which the facts necessary to constitute a cause of action are alleged. Strong v. L. & N. R. Co., 240 Ky. 781, 43 S. W. (2d) 11. Secondly, as to estoppel and laches. The property owners, though delaying in bringing this suit, promptly objected to this acceptance of the work, and the apportionment as soon as the work was accepted and the apportionment made, so that the town and the contractor were apprised of their position. They have refused to pay the assessments and there is no evidence that either the city or the contractor has on the faith of any alleged conduct on the part of these

property owners changed its or his position. Thus the elements of estoppel and laches are absent.

(3) To what extent did the court·err in eliminating certain items from the cost of the work, and to what extent did he correctly eliminate them? This question will have to be broken up into nine subdivisions. (a) Bridges. The street improvement work which is the subject of this litigation was done under what is called in this record "Contract C." One of the streets to be improved under this contract is described in this record as Greenup—Pond Run road—Vine street. It is the old state highway through the town, being composed in the main of Greenup avenue and Vine street which are connected by a short cross-arm, a portion of Pond Run road. We shall hereafter refer to this particular part of the work as it is called in the record, i. e., the Main highway. Another portion of the work covered by contract C was the improvement known as Brown street—Williams avenue—Franklyn street, composed of Franklyn street and Brown street, the two being connected by a short cross-arm, a portion of Williams avenue. Raceland avenue comprised another portion of the work. Further, certain work was to be done on the Pond Run road between the city limits and where it furnished the cross-arm between Greenup and Vine streets on the Main highway. Another street included in the authorized work was known as Smith street. This street was never improved. Some 700 odd feet off the end of Vine street at its city limits terminus was also not improved though authorized. In the doing of all this work, three bridges had to be erected to cross a stream of water known as Pond creek, which meandered through the town. One of these bridges carries Franklyn street across the stream and is known as the Franklyn street bridge. Another of these bridges carries the Main highway across the stream and is known as the Main highway bridge; and the third bridge carries Pond Run road over the stream and is known as the Pond Run road bridge. All of these bridges are made of concrete. As the work was done on a unit basis, it became necessary for the city engineer to measure and allow the contractor for the cubic yards of concrete entering into the construction of these bridges in order that the contractor might be recompensed therefor. The evidence shows that the engineer certified and the contractor was allowed for the Main highway bridge 44 cubic yards of

concrete, whereas there entered into the construction of that bridge only 26.49 cubic yards. For the Pond Run road bridge, the contractor was allowed 47.17 cubic yards, whereas there actually entered into the construction of that bridge only 31.28 cubic yards. The city engineer concedes these discrepancies and claims they are due to mistakes on his part. Of course, to the extent of these mistakes there must be a correction. When we come to the Franklyn street bridge, a different situation is presented. The contractor was allowed for 129.27 cubic yards on this bridge. There actually entered into its construction 180.25 cubic yards due, as we think the proof satisfactorily discloses, to the following: In excavating for the piers for this bridge a blue clay was encountered. It was obvious that either piles would have to be driven to support the pier or a great deal more excavating would have to be done in order to reach a firm base, or, as was done, planking would have to be put in upon which the concrete piers could rest. In order that these piers could rest safely on such planking, they would have to be feathered out at their base. This planking and feathering out was on the order of the city engineer done, and hence it is that the contractor actually put in more concrete on the Franklyn street bridge than that for which he was allowed since the estimate of concrete used on this bridge was based on the plans which did not provide for this feathering out. The total concrete in the three bridges for which the contractor was allowed came to 220.44 cubic yards. That which he actually put in came to 238.12 cubic yards. As the plaintiffs have opened up this apportionment on the ground of mistake, the mistakes should be equitably adjusted. The contractor was not allowed or paid for as much concrete as he actually had to use in these bridges to conform to the directions of the city engineer. True, the amounts were wrongfully apportioned to the three several bridges, but the total amount so apportioned did not actually equal the amount actually and necessarily used. The concrete actually used was necessary to be put in for these bridges to be constructed as required by the city engineer. The property owners have received full value for their money. Hence in equitably adjusting this matter of concrete used in these three bridges, the property owners should not be permitted to charge the contractor with the mistake where he was allowed more concrete than he put in without at the same time crediting him where he put in

more concrete than he was allowed, since the work was done on a unit basis and at the direction of the city engineer and was apportioned against property abutting on all the streets covered by contract C. The plaintiffs are not entitled to any correction on this score of mistake in the estimate of the concrete used in these three bridges. The court also deleted from the cost of these bridges the sum of $216 allowed as excavation for the Franklyn street bridge piers. It is conceded that the excavation for which this sum was allowed was not actually done; but the city engineer testifies, and there is no dispute about it, that although allowed as excavating, this $216 was really for the planking and work necessary to be done when the blue clay was encountered. It was in lieu of excavating. Although not properly charged as excavating, yet inasmuch as it was work that had to be done and was done under the order of the city engineer, and there is no evidence that the cost of it as allowed was not fair and reasonable, the court erred in eliminating it from the cost. The court also disallowed $78 for railings on this Franklyn street bridge. The original plans called for steel railings on this bridge, but the engineer eliminated steel railings and had concrete railings put in. However, he allowed the contractor for these railings at the unit rate provided for steel railings, whereas the contractor should have been allowed under the unit price provided for concrete railings. We are of opinion that the elimination of this item of $78 was correct and must stand.

(b) Sidewalks. The court made a correction in the cost of the Pond Run road sidewalks in the amount of $23.50 on the theory that the allowance for these sidewalks had been made at the rate of 27 cents per square foot, whereas the only unit price in the contract applicable thereto was 22 cents per square foot. It is satisfactorily shown that the extra allowance was for double strength sidewalks at the entrance to alleys or streets, the concrete being 5 inches in thickness there instead of the 4 inches called for by the plans, the change being made at the instance of the engineer. The sidewalks were thus strengthened in order to withstand the heavy hauling and vehicular traffic to which ordinary sidewalks are not subjected. In the cases of City of Maysville v. Davis, supra, and Hearne v. City of Catlettsburg, 239 Ky. 592, 40 S. W. (2d) 293, this court held that if in the course of the authorized work certain

minor changes in the plans are made pursuant to a right reserved in the plans to make changes and the work is done according to such changes and is accepted by the town, then the contractor is entitled to be paid for such work so done and the cost thereof may be apportioned as the other costs are. The changes in these sidewalks falling within this principle, this item of $23.50 should not have been eliminated by the court.

(c) Curbs. The court allowed the contractor for the curbs placed on Pond Run road at the rate of $18. per cubic yard. This was the unit price applicable to the construction of curbs. Some question is made as to the right to put these curbs in at all, but the court upheld that right and there is no cross-appeal. We are of the opinion that the lower court did not err in requiring these curbs to be paid for at the unit price provided for in the contract as that was the only measure to be found in the contract applicable to the payment for these curbs.

(d) Incidentals. The court deducted from the cost of the work $259.50 for certain incidentals on the theory that the work covered by them was part of the job. But the trouble about this theory is that the work was done not as a job but on unit prices. There was no provision for these incidentals which covered the removing of certain trees and fences and the installation of certain pipe railing on one of the bridges. These incidentals were ordered as the work progressed and fall clearly within the principle of the City of Maysville v. Davis and City of Catlettsburg Cases, supra. The contractor was entitled to compensation therefor, and the court should not have eliminated these items.

(e) Excavation on Williams, Brown, Franklyn, and Raceland avenues. The lower court deducted $700 for excavations on these streets on the theory that the dirt from these excavations should have been used to make fills on the Main highway, for which compensation was also allowed. It appears that some rather large fills were necessary on the Main highway, which, in the judgment of the engineer, had to settle over the winter months before the surface could be put on them during the following summer. Except for these fills the work done under contract C was done in the summer following the fall when the contract was let. In order not to have all the streets of the town, and especially Williams,

Brown, Franklyn, and Raceland avenues, torn up over the winter months, the city engineer had directed the contractor to make the fills on the Main highway from borrow pits. Now, it seems that where a fill is made from dirt taken out of an excavation which is part of the same work as that of the fill, the contractor is paid for the excavation but not the fill, whereas if a fill must be made from borrow pits, the contractor is allowed for the fill at the rate of the dirt excavated from the borrow pits to make the fill. Of course, if the contractor in the instant case should have made the fills on the Main highway with the dirt taken from the excavations on these other streets, he should not be paid both for the excavations and the fills. On the other hand, if he had to make the fills from borrow pits, he is entitled to be paid for the fill as well as the later excavations on the other streets. We are of opinion that the sequence of the work of filling and excavating here was a matter which lay at least in the sound discretion of the city engineer, subject to the later action of the council in accepting or rejecting the work. It patently was no abuse of discretion for the city engineer not to have torn up all or many of the streets of the city over the winter months. The disadvantages and discomforts to the town and its inhabitants support his judgment in leaving the excavations until the following summer whilst having the fills made during the fall and winter. The excavations from Williams, Brown, Franklyn, and Raceland avenues were actually used first to make a few fills on those streets, and secondly, to fill up some low private lots that abutted on these streets. We do not regard it as material where this excess dirt was placed under the facts as above detailed, since it had to be gotten rid of somehow and somewhere and the fills on the Main highway had already been rightfully made as above set out. We think the lower court erred in deducting this $700.

(f) Lowering water pipe. The court erred in disallowing this item, it falling in the same category as the incidentals discussed under (d) supra.

(g) Pipe railing. The court erred in disallowing the sum of $156 for 52 feet of pipe railing used on the Main highway bridge. It falls in the same category as the incidentals discussed under (d) supra.

(h) Curbs on the Main highway. The court de-

ducted 6 cents per foot from the amount allowed for the curbs on the Main highway because the curbs as installed were entirely different in design from that called. for by the plans and specifications and contained much less concrete than they would have contained had they been constructed according to their original design. Under the provisions in the contract as to unit prices, the trial court could not have done otherwise than he did.

(i) Excavation on the Main highway. There was a sharp dispute in the evidence as to how much excavation had been done on the Main highway. The contractor was allowed for 5,202.2 cubic yards. The lower court, after weighing the conflicting evidence and himself taking a view of the premises, came to the conclusion that the utmost excavation done on this part of the work was 2,500 cubic yards. Whatever discrepancy there was between the amount allowed and the amount done was due to a mistake on the part of the engineer in estimating the amount of the excavation. We cannot say in view of the conflict of the evidence that the chancellor erred in this particular and his action is upheld.

(4) The original ordinance authorizing the improvement work later done under contract C provided that Smith street and all of Vine street should be included in the improvement program. During the progress of the work, Smith street was by the city engineer eliminated as was also about 700 feet of the city limit end of Vine street. These eliminations would not be so material, but for the fact that the cost of the three bridges, to which we have referred, was by the improvement ordinance above mentioned directed to be spread out over all the property abutting on the streets to be improved. No contention is made on this appeal as to the right of the city so to spread such cost. Perhaps it is true that the elimination of the improvement of Smith street and the 700 feet of Vine street were it not for the bridges would have added no material burden on the property of the present contesting property owners, but it is obvious that the elimination of 700 feet of Vine. street and all of Smith street, the abutting property of both of which would have borne its part of the bridges, throws the cost of these bridges entirely on the abutting property of the rest of the streets actually improved, and hence materially raises their apportion-

ment. That this cannot be done is settled by the case of City of Hazard v. Adams, 229 Ky. 598, 17 S. W. (2d) 703. Of course, Cloran is entitled to be paid for his work, but the town having, through its city engineer and its council in later accepting his apportionment made out on an erroneous basis, committed the error of excluding Smith street and the 700 feet of Vine street from bearing their share of the cost of the bridges, is the one liable for the amount by which the assessment on the property liable for this street improvement program is diminished because of such exclusions.

(5) The court did not err in finding that the engineer's fee should be based on the apportionment as corrected. This was in strict accordance with the improvement ordinance. The property owner was clearly entitled to this relief on his apportionment, and to have his assessment so diminished. How this diminution is to be worked out as between the contractor, the city, and the engineer is not presented by this appeal. All that we have is whether the property owner should be relieved of the amount of the excess paid the engineer. This he is clearly entitled to have.

(6) The court did not err in appointing a special commissioner to ascertain the correct apportionment to the property which must bear the cost of this work. It is argued that although in cases of cities of the second, third, and fourth classes authority may be found for the court in a suit to correct apportionments to make the apportionment after the errors are corrected, no such authority can be found in cases of cities of the sixth class. Conceding arguendo the soundness of the defendant's position in this regard, we read the judgment in this case not as clothing the special commissioner with power to make the apportionment but only with power to ascertain the correct apportionment in the light of the judgment of the court. Of course, it will be the duty of the commissioner to report his finding to the court. Whether the court can then itself make the apportionment or must order the council to make the apportionment as directed by the court is not as yet presented by this record.

(7) As there was no showing that it was impossbile for Cloran to produce in court the bonds necessary to be canceled in order to meet the readjustment of the apportionment here involved, the court did not err in

ordering him to do so. The record shows that he yet owns sufficient of these bonds to take care of such re-adjustment. The fact that he had these bonds which he owned pledged at a bank does not per se render it impossible for him to produce them. The record does not show that he cannot reclaim them and produce them. If it turns out that he is unable to produce them, the court may then take care of the situation as the exigencies permit and demand.

Except to the extent herein indicated, the judgment is affirmed; otherwise it is reversed with instructions to modify the judgment in accordance with this opinion.